**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br><br>THE BON-TON STORES, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No.  18-10248 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: March 7, 2018 at 10:30 a.m.** |

### LIMITED OBJECTION OF CITY VIEW CAPITAL, LLC AND WILLOW INVESTMENT, LLC TO DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

City View Capital, LLC and Willow Investment, LLC collectively (the "Landlords"), by and through its counsel, hereby files the following Objection to the above-captioned debtors' (the "Debtors") motion (the "Motion") pursuant to sections 365(d)(4) of title 11 of the United States Code, seeking an order extending the deadline to assume or reject unexpired leases of nonresidential real property and respectfully represents as follows:

### BACKGROUND

1.  On February 4, 2018 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.

2.  Upon information and belief, Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  Landlords and Debtors are parties to unexpired, nonresidential real property leases which have been set forth and described in detail in pleadings already filed or to be filed in this case (the "Leases"). (See attached as Exhibits "A" and "B" the most recent amendments to the original Leases for City View Capital, LLC's and Willow Investment, LLC's properties, respectively).

1

4.   In addition, there is a sublease for a portion of the Willow Investment, LLC property for a "Jack Williams Tire Co." lease of space.  (See attached as Exhibits "C" the Jack Williams Lease).

5.   The Leases are leases "of real property in a shopping center" within the meaning of section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

6.   As of February 28, 2018, there is due and owing on the Leases the following amounts from February 4, 2018 through the end of the month, plus additional rent, including attorney's fees and costs:

   a.   City View Capital, LLC is owed $9,457.00 (24 days  of the $11,033.17 monthly rent); and

   b.   Willow Investment, LLC is owed $26,214.57 (24 days of the $30,583.66 monthly rent).

(See attached as Exhibit "D" Accountings for City View Capital, LLC's and Willow Investment, LLC's properties, respectively).

## OBJECTION AND JOINDER

6.   Debtors filed the Motion seeking an additional ninety (90) day extension, through and including the earlier of September 7, 2018, to assume or reject unexpired leases of non-residential real property, including the "Leases".

7.   Landlords join in, adopt and incorporate by reference any other relevant objections filed by other landlords in this case.

8.   Landlords reserve the right to supplement this Objection and make such other and further objections as may be necessary or appropriate.

9.   The Court should condition any extension on:

   a.   Debtors' timely payment of all amounts that come due under the Leases from and

2

after the Petition Date during the period up to and including February 4, 2018,

including, without limitation the "Stub" period rent due for February 2018; and

b. Compliance with the covenant terms of the Leases, including but not limited to

Debtors' responsibility to repair and maintain the properties.

10. Further, Landlords object to any extension of the deadline for assumption or rejection of

the Leases past the effective date of confirmation of any chapter 11 plan of reorganization.

**WHEREFORE**, Landlords respectfully request that the Court enter an order: (i) conditioning

approval of the Motion on the Debtors' timely payment of all amounts that come due under the

Lease after the Petition Date and compliance with the Lease terms; (ii) payment of Stub Rent; and

(iii) granting such other and further relief as the Court deems just and proper.

Dated: February 28, 2018

Respectfully submitted,
**JOHN R. WEAVER, JR., P.A.**
**Attorney at Law**

*By: /s/ John R. Weaver, Jr.*
John R. Weaver, Jr.
P.O. Box 510
Wilmington, Delaware, 19899
(302) 655-7371 (direct)
jweaverlaw@verizon.net

and

**STARK & STARK**
**A Professional Corporation**
Thomas S. Onder
Joseph H. Lemkin
993 Lenox Drive
Lawrenceville, NJ 08648
(609) 219-7458 (direct)
(609) 896-9060 (main)
(609) 895-7395 (facsimile)

Attorneys for City View Capital, LLC and
Willow Investment, LLC

3

4826-9946-2238, v. 1

# EXHIBIT A

<u>SECOND AMENDMENT TO LEASE</u>

THIS SECOND AMENDMENT TO LEASE (this "Amendment") is made and entered into as of this <u>2nd</u> day of September, 2015, by and between CITY VIEW CAPITAL, LLC, a <u>Pennsylvania</u> limited liability company ("Landlord"), and THE BON-TON DEPARTMENT STORES, INC., a Pennsylvania corporation ("Tenant").

RECITALS

A.      Beth Westgate, Inc. ("BWI"), as predecessor-in-interest to Landlord, and Tenant entered into that certain Lease Agreement dated as December 1, 1999 (the "Original Lease"), for furniture store premises consisting of 6,650 square feet located at Westgate Shopping Center in Bethlehem, Pennsylvania for an initial term expiring November 30, 2002.

B.      The Original Lease was amended pursuant to that First Amendment to Lease dated October, 2005, between BWI and Tenant (the "First Amendment" and, together with the Original Lease, the "Lease").

C.      Pursuant to the First Amendment and separate written notice from Tenant to Landlord dated October 12, 2010, the term of the Lease has been extended through January 31, 2016.

D.      Landlord and Tenant now desire to further extend the term and amend the Lease in certain other respects as hereinafter set forth.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants and restrictions contained herein, the Lease is hereby amended as follows:

1.      <u>EXTENSION OF TERM.</u>  Landlord and Tenant hereby agree that the term of the Lease is hereby extended from February 1, 2016 through January 31, 2022 (the "Third Extension Term") upon all of the terms, covenants and conditions contained in the Lease, as amended hereby, unless the Lease is sooner terminated pursuant to the provisions thereof.

2.      <u>OPTIONS TO EXTEND.</u>  Notwithstanding anything to the contrary contained in the Lease or this Amendment, Landlord and Tenant hereby acknowledge and agree that Tenant has the remaining right and option to further extend the term of the Lease for four (4) additional successive periods of five (5) years each ("Option Terms"), commencing upon the expiration of the Third Extension Term. Landlord and Tenant hereby further acknowledge and agree that such four (4) options are Tenant's sole and only remaining options to extend or renew the term of the Lease, as amended hereby. Such four (4) options, if exercised by Tenant, shall each be exercised at least ninety (90) days before the end of the then-current term by written notice to Landlord.

3.      <u>MINIMUM RENT.</u>  Notwithstanding anything to the contrary contained in the Lease or this Amendment, Landlord and Tenant hereby agree that, commencing February 1, 2016 and continuing throughout the Third Extension Term, Tenant shall pay annual base rent to Landlord in the amount of $94,762.50 per annum.  Said amount shall be payable monthly in advance on the first day of each calendar month in equal monthly installments of $7,896.88 each.

1

Said amount shall be payable in addition to taxes and all other charges under the Lease and this Amendment. Annual base rent during the Option Terms shall increase by an amount equal to $4,987.50 at the commencement of each Option Term.

4.      COMMON AREA MAINTENANCE CHARGES.  Notwithstanding anything to the contrary contained in the Lease or this Amendment, Landlord and Tenant hereby agree that, commencing February 1, 2016 and continuing throughout the Third Extension Term, Tenant shall pay, as its share of Landlord's Common Area Maintenance (CAM) Charges ("Tenant's CAM Costs") the annual sum of $24,937.50 per annum ($2,078.13 per month). Tenant's CAM Costs shall increase during the Option Terms by an amount equal to $1,662.50 at the commencement of each Option Term. Tenant shall pay Tenant's CAM Costs to Landlord in equal monthly installments in advance on the first day of each calendar month.

5.      NOTICES.  Landlord and Tenant hereby agree that Section 14.09 of the Lease is hereby amended to provide that any notice, demand, consent, approval, request, statement, document or other communication required or permitted to be given to or served upon either party hereto pursuant to the Lease or applicable law shall be in writing and may be sent by certified mail, return receipt requested, or by a reputable overnight delivery service, postage or other charges prepaid.

6.      LEASE UNMODIFIED.  Except as specifically modified hereby, the Lease shall remain in full force and effect and unmodified. Any terms in this Amendment used but not defined herein shall have the meaning ascribed to such term in the Lease.

7.      AGREEMENT BINDING.  This Amendment shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns (but this reference to assigns shall not be deemed to act as a consent to an assignment of the Lease, as amended hereby, by Tenant).

8.      COUNTERPARTS.  This Amendment may be executed in any number of counterparts, each of which so executed shall be deemed an original, and such counterparts shall together constitute a single instrument.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Second Amendment to Lease as of the date first written above.

LANDLORD:

CITY VIEW CAPITAL, LLC

By:_____
Name: Mark Pepitone
Title: Member

ATTEST:

_____

TENANT:

THE BON-TON DEPARTMENT STORES, INC.

By: _____
Name: Paul E. Ruby
Its:    Senior Vice President - Real Estate

ATTEST:

_____

3

# EXHIBIT B

### FIFTH AMENDMENT TO SUBLEASE

**THIS FIFTH AMENDMENT TO SUBLEASE** (this "Amendment") is made and entered into as of this 8th day of September, 2016, by and between **WILLOW INVESTMENT, LLC**, a Pennsylvania limited liability company ("Landlord"), and **THE BON-TON DEPARTMENT STORES, INC.**, a Pennsylvania corporation ("Tenant").

### RECITALS

A.    Crown America Corporation ("Crown"), as predecessor-in-interest to Landlord, and Hess's Department Stores, Inc. ("Hess"), as predecessor-in-interest to Tenant, entered into that certain Sublease Agreement dated as of January 8, 1992 (the "Original Sublease"), for premises located at the Westgate Shopping Center in Bethlehem, Pennsylvania (the "Premises") for an initial term expiring November 23, 2000.

B.    The Original Sublease was amended pursuant to that Amendment to Sublease dated March 9, 1992, between Crown and Hess; that Assignment, Assumption and Amendment of Lease dated September 30, 1994, among Crown American Properties, L.P. ("CAP"), The Bon-Ton Stores, Inc. ("Bon-Ton Parent"), as predecessor-in-interest to Tenant, and Hess; that Letter Agreement dated November 5, 1996, among CAP, Bon-Ton Parent and Hess, and that Fourth Amendment to Sublease dated September 2, 2015 among the parties hereto (each of the foregoing amendments, collectively with the Original Sublease, shall be referred to herein as the "Sublease").

C.    Landlord and Tenant now desire to reduce the leased area of the Premises by removing the area designated as the Transferred Area on Exhibit "A" (the "Transferred Area") on the terms and conditions described herein.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants and restrictions contained herein, the Sublease is hereby amended as follows:

1.    <u>REDUCTION OF LEASED AREA.</u>  Landlord and Tenant hereby agree, without abatement or rent or any other consideration except as set forth in Section 2 below, to reduce the leased area of the Premises by removing the Transferred Area from the Sublease in all respects. The Transferred Area shall from this date forward not be considered part of the "Premises" or any equivalent term as used in the Sublease.

2.    <u>NET REVENUE SHARING.</u>  The parties hereby agree that, during the Fourth Extension Term and any Option Terms, and provided that Tenant is in full compliance with the Sublease and such Sublease shall not have been otherwise terminated and shall be in full force and effect:

> (a)  Landlord shall make commercially reasonable efforts to lease the Transferred Area to a third party tenant or tenants (collectively, a "Third Party Tenant");

(b) Landlord will advise Tenant of the proposed height of the structure(s) to be erected on the Transferred Area for approval by Tenant. Such approval shall not be unreasonably withheld or delayed.

(c) Landlord shall pay to Tenant, within ten (10) business days of receipt thereof, fifty percent (50%) of Net Revenues received by Landlord from a Third Party Tenant of the Transferred Area. "Net Revenues" as used in this Amendment shall mean total rent revenues received by Landlord with respect to the Transferred Area net of any and all expenses associated therewith paid by Landlord, including, but not limited to, taxes, brokerage fees and commissions, permitting and development fees, legal fees, maintenance, repairs, capital improvements, landlord improvements, debt incurred with respect to any of the foregoing, and any other expenses paid by Landlord and associated with the Transferred Area or the leasing thereof, as the case may be.

Until such time that the Transferred Area is leased to a Third Party Tenant, Tenant shall continue to be solely responsible for all costs and expenses associated with the Transferred Area, including, but not limited to, taxes, insurance and maintenance. If after the Transferred Area is leased to a Third Party Tenant, the Third Party Tenant vacates the Transferred Area, Landlord shall be responsible for payment of the costs and expenses, but those costs and expenses shall be applied against any future revenue if the Transferred Area is thereafter again leased to a Third Party Tenant.

3.    ADDITIONAL DOCUMENTS. Tenant hereby acknowledges and agrees that in order for the Transferred Area to be a commercially viable rental property and to comply with the requests of any Third Party Tenant, the Transferred Area may require certain rights in relation to the Premises remaining under Tenant's control. Accordingly, Tenant hereby agrees that it shall acquiesce to and, if appropriate, execute commercially reasonable easements and access agreements, including, but not limited to, easements and agreements granting patrons of the Transferred Area parking privileges on and access through the Premises. Furthermore, Tenant hereby agrees to execute any other commercially reasonable document or agreements relating to the Transferred Area, including but not limited to required Lender documents for debts incurred in connection with paragraph 2(c) above, if and when requested by Landlord.

4.    LEASE UNMODIFIED. Except as specifically set forth herein, the Sublease shall remain in full force and effect and unmodified, and is hereby ratified and affirmed by the parties. Any term used but not defined herein shall have the meaning set forth in the Sublease.

5.    AGREEMENT BINDING. This Amendment shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

6.    COUNTERPARTS. This Amendment may be executed in several counterparts,

each of which so executed shall be deemed an original, all of which when taken together shall be one instrument.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Fifth Amendment to the Sublease as of the date first written above.

LANDLORD:

**WILLOW INVESTMENT, LLC**

By: _____
Name: Mark Pepitone
Title: Member

ATTEST:

TENANT:

**THE BON-TON DEPARTMENT STORES, INC.**

By: _____
Name: Paul E. Ruby
Title: Senior Vice President – Real Estate

ATTEST:



# EXHIBIT C

# LEASE

This Lease made and entered into as of this _19th_ day of January, 2004, by and between The Bon-Ton Department Stores, Inc. ("Landlord"), and Jack Williams Tire Co., Inc. ("Tenant");

## WITNESSETH:

In consideration of the rents hereinafter agreed to be paid and in consideration of the mutual covenants and agreements hereinafter recited, Landlord does hereby lease and demise unto Tenant and Tenant does hereby lease and take from Landlord the premises described on Exhibit A attached hereto which is incorporated herein (as used herein, "Premises" shall refer to all three locations described on Exhibit A and the term "Individual Premises" shall refer to one or more of such locations).

TO HAVE AND TO HOLD the said Premises unto the Tenant upon the following terms and conditions:

1. <u>Demise of Premises</u>. Landlord leases unto Tenant, and Tenant accepts from Landlord, the Premises.

2. <u>Use of Premises</u>. The Premises may only be used for the sale of automotive services and tires. The Premises shall not be used for any other purpose without the prior written consent of Landlord, which consent may be withheld or denied in Landlord's sole discretion.

3. <u>Term and Renewal</u>. The initial term of this Lease shall be for a period of five (5) years to commence on January 1, 2005 and expire on December 31, 2010 (the "Initial Term"). Provided the Tenant complies with all the terms and conditions of this Lease, Tenant shall have the option to renew this Lease for one (1) additional term of five years (the "Renewal Term") on the same terms and conditions herein except as may be set forth in Section 4 below. If Tenant elects to exercise such option, notice must be given to Landlord on or before January 1, 2010. As used in this Lease, "Term" shall mean the Initial Term and, if the option is properly exercised, the Renewal Term.

4. <u>Rentals</u>. Tenant shall pay to Landlord, without demand therefore or offset therefrom, except as otherwise provided herein, minimum rent in the amounts noted below:

The minimum rent shall be allocated one-third to each Individual Premises.

All rent shall be due and payable in monthly installments in advance on the first day of each month of the Term.

5.  <u>Surrender of Premises</u>.  At the termination of this Lease, Tenant shall surrender the Premises to Landlord in broom swept condition.  The Premises must be in the same condition as existed at the commencement of the Term, subject to Section 11, normal wear and tear and loss from insured casualty excepted.  Tenant must remove all its property, including trade fixtures, from the Premises prior to the expiration of the Term.

6.  <u>Holding Over</u>.  In the event Tenant is in possession after the expiration of the Term without either the exercise of an option or the execution of a new lease, Tenant shall not acquire any right, title or interest in or to the Premises.  In such event, and if Landlord shall accept rent payments, Tenant shall occupy the Premises as a tenant from month-to-month and shall otherwise be subject to all of the conditions, provisions and obligations of this Lease insofar as the same shall be applicable.  Rent shall continue at 150% of the last applicable rate.

7.  <u>Assignment or Subletting</u>.  Tenant shall not have the right to assign this Lease or to sublet the Premises in whole or in part without the prior written consent of Landlord, which shall not be unreasonably withheld.  However, no consent is required if the assignment or subletting is to an affiliate of Tenant.

8.  <u>Utilities</u>.  Tenant shall be responsible for all utilities used at the Premises during the Term.

9.  <u>Maintenance, Repairs and Renovations</u>.  Throughout the Term of this Lease;

a)  Landlord agrees at its expense to:

i)  Maintain in good condition and make all necessary repairs and replacements to the exterior of the Premises including, without limitation, the roof and all of its components, walls, foundation, gutters, downspouts and curb-cuts, but excluding exterior doors, windows and window framing;

ii)  Make all necessary exterior and interior structural repairs and replacements to the Premises;

iii)  Make all necessary repairs and replacements to the parking areas, sidewalks, driveways, and other hard-surfaced areas providing access to or parking for the Premises;

iv)  Make all repairs and replacements to the interior including, but not limited to, the interior walls, ceilings, floors and floor coverings, but only when necessitated by Landlord's failure to perform its obligations under subsections (i) through (iii) hereof, including any damages to the Premises which are caused by Landlord in the performance of its obligations to repair and replace as provided in said subsections; and

v) Make all repairs and replacements required by any laws, ordinances or regulations of any public authorities having jurisdiction of those portions of the Premises which Landlord is required to maintain;

provided, however, Landlord shall not be obligated to make any repairs or replacements necessitated by the acts or negligence of Tenant, its officers, agents, employees, customers or contractors.

b) Tenant agrees at its expense to keep in good condition and make all necessary repairs and replacements to all other parts of the Premises, including but not limited to, all plumbing, heating and air conditioning and electrical systems serving the Premises, to make all repairs and replacements required by any laws, ordinances or regulations of any public authorities having jurisdiction of those portions of the Premises which Tenant is required to maintain, and to make all repairs and replacements necessitated by the acts or negligence of Tenant, its officers, agents, employees, customers or contractors. Tenant shall not be required to make any repairs, replacements or restorations made necessary by reason of fire or other casualty, however caused, to the extent such repairs are required to be made by Landlord as provided herein.

c) Anything in this Lease to the contrary notwithstanding, Landlord agrees that if in any emergency it shall become necessary to promptly make any repairs hereby required to be made by Landlord, Tenant may, at its option, proceed forthwith to have such repairs made and pay the cost thereof. Landlord agrees to reimburse Tenant for the reasonable cost of such repairs on demand.

10. Inspections, Access. Landlord, without abatement of rent and without being deemed guilty of an eviction of Tenant, may enter the Premises at reasonable hours to exhibit the same to prospective purchasers, mortgagors and tenants, to make repairs required of Landlord, and to make repairs, alterations or additions to adjoining space which Landlord shall deem necessary and to take upon the Premises all materials that may be required. But in so doing, Landlord shall not materially, adversely impact Tenant's ability to do business.

11. Alterations and Improvements; Signs. Tenant shall make no alterations in, nor additions to, the Premises without first obtaining Landlord's written consent, which consent shall not be unreasonably withheld or delayed; provided, however, Tenant shall not make any structural alterations or exterior alterations to the Premises. All additions, fixtures and improvements, (except the movable property, including all trade fixtures and partitions of Tenant), made in or upon the Premises, either by Landlord or Tenant, shall be Landlord's property and shall remain upon the Premises at termination, by lapse of time or otherwise, without compensation to Tenant, provided, however, if Landlord shall give Tenant notice to remove such additions, fixtures and improvements installed by Tenant, Tenant shall remove same within ten (10) days after the end of the Term and shall repair all damage caused by such removal. Tenant shall not allow any liens to be placed on the Premises as a result of Tenant's work. Tenant shall not erect or install any signs on the Premises except those which are in conformity with all applicable ordinances, regulations and laws, and only after securing Landlord's consent thereto which consent shall not unreasonably be withheld or delayed.

e:\Sa\leases\jjack-williams                        3

12. Tenant's Property. All property placed on the Premises by, at the direction of, or with the consent of Tenant, its employees, agents, licensees or invitees, shall be at the risk of Tenant or the owner thereof and Landlord shall not be liable for any loss of or damage to said property resulting from any cause whatsoever.

13. Fire Insurance. Landlord shall carry, or shall cause to be carried, fire insurance with extended coverage insuring against loss or damage to the buildings and/or other improvements on the Premises at replacement cost with a company licensed to do business in Pennsylvania. Tenant shall carry at Tenant's expense fire insurance with extended coverage insuring against loss or damage to Tenant's furnishings, fixtures, inventory, equipment and other property situated or placed upon, in or about the Premises. All insurance required hereby shall be kept in force during the entire Term.

14. Indemnification. Tenant shall hold Landlord harmless and defend Landlord against any and all claims or liability for any injury or damage to any person in or about the Premises or any part thereof. The provisions of this Section 14 shall survive the expiration or termination of the Lease with respect to any claims or liability occurring prior to such expiration or termination. Tenant shall carry commercial general liability insurance in the minimum amount of $3,000,000 single limit, naming Landlord as additional insured, and Tenant shall deliver to Landlord certificates of insurance of such coverage.

15. Fire or Other Casualty. Tenant shall give immediate notice to Landlord of any damage to any of the Individual Premises by fire or other casualty. Unless Landlord is not obligated to restore pursuant hereto, Landlord shall cause the damage to be repaired within thirty (30) days or such longer period as may reasonably be required to effect such repair. Rent shall be proportionately reduced to the extent that the Individual Premises are rendered untenantable for Tenant's specific use. If the Individual Premises are destroyed or are so damaged that in normal course the Individual Premises cannot be made tenantable within ninety (90) days of the date of the damage, or if the damage occurs during the last year of the Initial Term or during the last year of the Renewal Term, Landlord may terminate this Lease with respect to the Individual Premises affected by written notice to Tenant effective as of the date of such damage. Rentals shall be adjusted as the date of the damage and any prepaid rent returned to Tenant. Tenant shall vacate the Individual Premises within thirty (30) days from the notice of termination.

16. Condemnation. Landlord agrees to promptly notify Tenant of any condemnation proceedings or threat thereof. If any of the Individual Premises are taken or condemned for a public or quasi-public use (or any transfer is made under threat of condemnation), then this Lease shall terminate with respect to the Individual Premises affected at the later of the vesting of title in the condemning authority or the acquisition of possession thereby. Rent shall be apportioned as of that date and Tenant shall not be entitled to any portion of the award whether for loss of leasehold, loss of value of the remaining period or loss of fixtures, but Tenant shall be entitled to any separate award available for moving expenses and damage to its business. If any part of any of the Individual Premises shall be taken or condemned for a public or quasi-public use (or any transfer is made under threat of condemnation) and a part thereof remains which is reasonably suitable for Tenant's use as determined at the sole discretion of Tenant, this Lease shall not terminate with respect to the Individual Premises affected, but the rentals payable by Tenant shall be adjusted so that Tenant shall be required to pay for the remainder of the Term rentals equitably reduced by the reduction in tenantability of the Individual Premises. The aforesaid

partial condemnation shall be without prejudice to the rights of either Landlord or Tenant to directly recover compensation from the condemning authority for any of its loss or damage caused by such condemnation. Neither Landlord nor Tenant shall have any rights in and to any award made to the other by such condemning authority.

17. Covenant of Title and Quiet Enjoyment. Landlord covenants and warrants to Tenant that Landlord has full right and lawful authority to enter into this Lease for the Term hereof and that provided Tenant is not in default hereunder, and subject to the Over-leases and all restrictions and encumbrances of record, Tenant's quiet and peaceable enjoyment of the Premises shall not be disturbed by Landlord or anyone claiming by, through or under Landlord.

18. Notices and Consents. All notices and consents required under this Lease shall be in writing and shall only be deemed properly served when delivered by overnight carrier, such as Federal Express, or by certified United States mail, postage prepaid, return receipt requested, addressed to the party to whom directed at the following address or at such other address as may be from time to time designated in writing:

If to Landlord by certified U.S. Mail:

> The Bon-Ton Department Stores, Inc.
> P. O. Box 2821
> York, Pennsylvania 17405-2821
> Attention: Vice President – Real Estate

If to Landlord by other delivery service:

> The Bon-Ton Department Stores, Inc.
> 2801 East Market Street
> York, Pennsylvania 17402-2495
> Attention: Vice President – Real Estate

With a duplicate copy delivered in either case, by certified U.S. Mail to:

> The Bon-Ton Department Stores, Inc.
> P. O. Box 2821
> York, Pennsylvania 17405-2821
> Attention: Vice President – General Counsel

If to Tenant:   Jack Williams Tire Co., Inc.
> 700 Rocky Glen Road
> Avoca, Pennsylvania 18641

Notices shall be deemed served upon delivery.

19. Rental Payments. All rental payments, until otherwise designated in writing, shall be made to Landlord at P. O. Box 2821, York, PA 17405, Attention: Accounting Bookkeeper.

20.    Binding Effect and Complete Terms.    The terms, covenants, conditions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns as in this Lease permitted. No modification hereof or other purported agreement of the parties shall be enforceable unless the same is in writing and signed by the Landlord and Tenant.

21.    Easements, Restrictions and Rights of Way.    The Premises are demised subject to all easements, restrictions and rights of way legally affecting the Premises. However, no such easement, restriction or right of way shall prohibit or substantially impair the use of the Premises as intended pursuant to Section 2 above.

22.    Law Applicable.    This Lease shall be construed under the laws, statutes and ordinances of the Commonwealth of Pennsylvania.

23.    Waiver.    No failure by either party to exercise any rights hereunder to which it may be entitled shall be deemed a waiver of a party's right to subsequently exercise same. A party shall gain no rights nor become vested with any power to remain in default under the terms hereof by virtue of the other party's failure to timely assert its rights.

24.    Tenant Defaults

a.    Each and every one and all of the following events shall constitute an Event of Default by Tenant:

i.    if Tenant files a petition in bankruptcy, insolvency, or for reorganization under any bankruptcy act, or voluntarily takes advantage of any such act or makes an assignment for the benefit of creditors and any such action is not terminated within thirty (30) days;

ii.    if voluntary proceedings under any bankruptcy law, insolvency or receivership action shall be instituted against Tenant, or if a receiver or trustee shall be appointed for all or substantially all of the property of Tenant and such proceedings are not dismissed, or the receivership or trusteeship vacated, within thirty (30) days after the institution or appointment;

iii.    if Tenant fails to pay any sum due from it in strict accordance with the provisions of this Lease, and does not make the payment within ten (10) days after written notice thereof;

iv.    if Tenant fails to fully perform and comply with each and every condition and covenant of this Lease, and such failure of performance continues for a period of thirty (30) days after written notice thereof or for such longer period as shall be necessary to cure the same so long as the cure is started within said thirty (30) days and diligently completed thereafter;

v.    if Landlord, in any three (3) months of any consecutive twelve (12) month period during the Term, gives any notice to Tenant pursuant to subparagraphs iii. and iv. above, notwithstanding Tenant's cure of default within the allowable period or periods.

b.    Upon the occurrence of any Event of Default by Tenant, Landlord may, at its option, exercise any one or more of the following rights:

i.    Landlord, with or without terminating this Lease, may perform, correct or repair any condition which shall constitute a failure on Tenant's part to keep, observe, perform, satisfy, or abide by any term, condition, covenant, agreement, or obligation of this Lease, and Landlord may reenter the Premises for such purposes, and Tenant shall fully reimburse and compensate Landlord on demand for all costs and expenses incurred by Landlord in such performance, correction or repair, including, without limitation, accrued interest from the date incurred until date of payment at 3% above the prime rate of PNC Bank National Association.

ii.    Landlord, with or without terminating this Lease, may immediately or at any time thereafter demand in writing that Tenant vacate the Premises and thereupon Tenant shall vacate the Premises and remove therefrom all property thereon belonging to or placed on the Premises by, at the direction of, or with the consent of Tenant, within three (3) business days of receipt by Tenant of such notice from Landlord, whereupon Landlord shall have the right to reenter and take possession of the Premises. Any such demand, reentry and taking possession of the Premises by Landlord shall not of itself constitute an acceptance by Landlord of a surrender of this Lease or of the Premises and shall not of itself constitute a termination of this Lease by Landlord.

iii.    Landlord, with or without terminating this Lease, may immediately or at any time thereafter reenter the Premises and remove therefrom Tenant and all property belonging to or placed on the Premises by, at the direction of, or with the consent of Tenant. Any such reentry and removal by Landlord shall not of itself constitute an acceptance by Landlord of a surrender of this Lease or of the Premises and shall not of itself constitute a termination of this Lease by Landlord.

iv.    Landlord, with or without terminating this Lease, may immediately or at any time thereafter relet the Premises or any part thereof for such term or terms (which may be for a term extending beyond the Term), at such rental or rentals and upon such other terms and conditions as Landlord in its sole discretion may deem advisable, and Landlord may make any alterations, redecorations or repairs to the Premises which it may deem reasonably necessary or proper to facilitate such reletting; and Tenant shall pay all costs of such reletting including but not limited to the reasonable cost of any such alterations, redecorations and repairs made to the Premises, reasonable attorneys' fees and reasonable broker's commissions; and if this Lease shall not have been terminated, Tenant shall continue to pay all minimum annual rent and all other charges due under this Lease up to and including, without limitation, the date of beginning of payment of rent by any subsequent tenant of part or all of the Premises, and thereafter Tenant shall pay monthly during the remainder of the Term the difference, if any, between the rent and

other charges collected from any such subsequent tenant or tenants and the minimum annual rent and other charges reserved in this Lease, but Tenant shall not be entitled to receive any excess of any such rents collected over the minimum annual rent reserved herein.

v.  Subject to any express provision of this Lease to the contrary, Landlord may immediately or at any time thereafter terminate this Lease, and this Lease shall be deemed to have been terminated upon receipt by Tenant of written notice of such termination. Upon such termination, Landlord shall recover from Tenant all arrearages in minimum annual rent, all other charges due under this Lease, costs, charges, assessments, and reimbursements, the cost (including, without limitation, court costs and attorneys' fees) of recovering possession of the Premises and, in addition thereto, Landlord may declare to be due and payable immediately the then present value (calculated with a discount factor of eight percent (8%) per annum) of the difference between (x) the entire amount of minimum annual rent and other charges and assessments which in Landlord's reasonable determination would become due and payable during the remainder of the Term (in the absence of the termination of this Lease), and (y) the then fair market rental value of the Premises for the remainder of the Term. Upon the acceleration of such amounts, Tenant agrees to pay the same at once, in addition to all minimum annual rent, costs, charges, assessments, and reimbursements therefore due; provided, however, that such payment shall not constitute a penalty or forfeiture, but shall constitute liquidated damages for Tenant's failure to comply with the terms and provisions of this Lease (Landlord and Tenant agreeing that Landlord's actual damages in such event are impossible to ascertain and that the amount set forth above is a reasonable estimate thereof).

vi.  Tenant agrees that Landlord shall have no obligation to mitigate damages in the event an Event of Default shall occur, and that if Landlord shall endeavor to relet the Premises, it may abandon such effort at any time and from time to time.

c.  Upon any breach hereof, regardless of whether such breach is, or becomes, an Event of Default, Landlord shall be reimbursed by Tenant for any reasonable attorney's fees incurred by Landlord in connection with such breach.

25. Landlord Defaults

In the event that Landlord defaults or fails to timely perform its obligations hereunder, Tenant shall promptly notify Landlord in writing of the same, and Landlord shall have thirty (30) days after written notice thereof, or such longer period as shall be necessary to cure the same so long as Landlord commences to cure within said thirty (30) days and diligently completes thereafter. If Landlord fails to comply, then Tenant may proceed, but is not required, to cure such default or failure of performance itself, and Landlord shall be responsible for reimbursing the reasonable cost thereof incurred by Tenant in effecting such cure upon written demand by Tenant to Landlord.

In the event that Landlord fails to cure such default or failure of performance hereunder, Landlord shall be liable for any reasonable attorney's fees incurred by Tenant in the enforcement of this Lease.

26. Subordination. This Lease and the rights of Tenant shall either be subordinate or superior, at the mortgagee's election (in the absence of an election, the mortgage shall be superior), to the lien of any mortgage or deed of trust placed upon the Premises at any time by Landlord or Landlord's successors and shall be subordinate and subject to the terms and conditions of the leases pursuant to which Landlord has possession of the Premises, which leases are described in Exhibit "B" attached hereto and are herein referred to as the "Overleases". Tenant shall at all times upon request of Landlord promptly furnish documents stating, so long as the same be true, that this Lease is in full force and effect, that no defaults of the Landlord exist, and such other matters as are customarily contained in what is known as an "estoppel letter" or a "goodstanding letter".

27. Waiver of Subrogation. Neither party nor anyone claiming by, through, under, or in either party's behalf shall have any claim, right of action or right of subrogation against the other party for or based upon any loss or damage caused by fire, explosion or other casualty relating to the Premises or to any property upon, in, or about the Premises, whether such fire, explosion or other casualty shall arise from the negligence of either party or its agents, representatives or employees, or otherwise.

28. Acceptance of Premises. Tenant is occupying the Premises prior to commencement of the Initial Term, and accepts the Premises in its "as-is" condition at commencement of the Initial Term. Tenant hereby confirms that all portions of the Premises which are to be maintained and repaired by Landlord are in good condition as of commencement of the Initial Term.

29. Compliance with Legal Requirements. Tenant shall comply with all legal requirements of every nature, including those of all government or quasi-government bodies including City, County, State or federal boards having jurisdiction thereof, respecting any operation conducted or any equipment, installations or other property placed upon, in or about the Premises, in each case, by Tenant. Tenant shall neither create nor permit the creation of any nuisance upon, in or about the Premises, and Tenant shall not make any offensive use thereof.

30. Taxes and Assessments. Landlord shall pay all real estate taxes and assessments levied against the Premises.

31. Construction of Lease. The Lease shall not be construed more strictly against either party regardless of which party is responsible for the preparation of the same.

32. Force Majeure. In the event that either party shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lock-outs, labor troubles, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war or other reason of a like nature not the fault of such party, in performing work or doing acts required under the terms of this Lease, then performance of such act shall be excused for the period of the delay and the period for the performance of any act shall be extended for a period equivalent to the period of such delay. No delay, hindrance or prevention of Tenant from acting shall entitle Tenant to delay payment of rent.

33. Environmental Indemnification.

a)    Tenant agrees to protect, defend, indemnify and hold harmless Landlord and its shareholders, directors, officers, employees, representatives, agents, successors and assigns from and against any and all damages, losses, liabilities, obligations, penalties, fines, claims, demands, judgments, suits, proceedings, costs, disbursements or expenses (including, without limitation, attorneys' fees and experts' fees, and all costs of defense) in any way relating to or arising out of Environmental Liability as defined herein caused solely by the acts or activities of Tenant, its employees, agents, invitees, successors and/or assigns at the Premises or which is related to the business conducted by Tenant at the Premises.

b)    The term "Environmental Liability" shall mean any reasonable cost or expense of any nature whatsoever (i) incurred due to any administrative, regulatory, or judicial actions, suits, obligations, proceedings, penalties, demands, orders, or other claims relating to any Environmental Law or (ii) arising from the presence or release of any Hazardous Materials at or on the Premises, including any reasonable cost and expense required by any third party (including, but not limited to, any federal, state, or local administrative or governmental authority) to be undertaken pursuant to any Environmental Law to contain, remove, remedy, respond to, clean-up, remediate or abate any release of Hazardous Material on, in, under or affecting all or any portion of the Premises or any property located near, but not necessarily adjacent to, the Premises (hereinafter referred to as "Other Property"). Environmental Liability includes, without limitation, any and all costs, expenses, damages, fees and disbursements reasonably incurred with respect to (i) any investigation, study, assessment, monitoring or testing activity, legal representation, and/or cost recovery action by a governmental entity or private party; (ii) any part of the Premises or Other Property as a result of actions or measures necessary to implement or effectuate any containment, removal, remediation, response, clean-up or abatement; and (iii) the resolution of such Environmental Liability.

c)    The term "Hazardous Material" shall include any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9601 et. seq., as it may be amended, any hazardous or toxic substance, material or waste which presents a risk to human health or the environment under any Environmental Law, and petroleum, crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas (collectively referred to as "Natural Gas Products"), synthetic gas and/or mixtures of Natural Gas Products and synthetic gas.

d)    The term "Environmental Law" shall include any and all applicable federal, state or local laws, rules, regulations, or ordinances, guidelines, policies, or rules of common law as in effect, promulgated or enacted on or subsequent to the commencement of the Term, which may relate to or deal with human health, safety, the environment, or natural resources.

e)    This Indemnification shall survive for an indefinite period of time beyond the termination of the Lease.

IN WITNESS WHEREOF, each of Landlord and Tenant have caused this Lease to be executed by its duly authorized representative this the day and year first above written.

AS TO LANDLORD:                    THE BON-TON DEPARTMENT STORES, INC.

                                   By: _____
                                       Jack Boonshaft
                                       Vice President

AS TO TENANT:                      JACK WILLIAMS TIRE CO., INC.

                                   By: _____
                                       William C. Williams
                                       President/CEO

## Exhibit A

### The Premises

Bethlehem PA – Westgate Mall

    Approximate 5,125 SF building occupied by Tenant.

Allentown PA – South Mall

    Approximate 5,170 SF building occupied by Tenant.

Easton PA – Palmer Park Mall

    Approximate 5,125 SF building occupied by Tenant.

## Exhibit B

### The Overleases

### Bethlehem PA – Westgate Mall

Sublease dated January 8, 1992, as amended, presently between Crown American Properties, L.P. and The Bon-Ton Department Stores, Inc.

### Allentown PA – South Mall

Lease dated October 1, 1975, as amended, presently between PR Financing Limited Partnership and The Bon-Ton Department Stores, Inc.

### Easton PA – Palmer Park Mall

Lease dated August 21, 1972, as amended, presently between Palmer Park Mall Limited Partnership and The Bon-Ton Department Stores, Inc.

# EXHIBIT D

**Accountings for**
**City View Capital, LLC and Willow Investment, LLC**
**February 28, 2018**

Willow Investment, LLC
Department Store at Westgate Mall in Bethlehem, PA
o        Rent $30,583.66/mo.
o        City Real Estate Taxes (due 3/30) $26,396.55

City View Capital, LLC
Furniture Store at Westgate Mall in Bethlehem, PA
o        Rent $11,033.17/mo.



City Of Bethlehem
Bureau of Financial Services
10 E. Church Street
Bethlehem PA 18018-6025

## 2018 Real Estate Tax Bill

Phone: 610-865-7125
Fax: 610-997-5004
www.bethlehem-pa.gov

## Property Summary

| Account Number: 113-012250<br>Property ID: F11NW4D 1 1A<br>641895173264    1 | Property Owner: **WILLOW INVESTMENT LLC**<br><br>Address: **2425 SCHOENERSVILLE RD**<br>District: **CITYL** | Assessed Value - 4853200.00<br>Tax Rate (Mills) - 5.55 |
|---|---|---|

## Tax Summary

| Tax | If paid by | Amount Due |
|---|---|---|
| Discount (2%) | 03/30/2018 | 26396.55 |
| Base | 05/31/2018 | 26935.26 |
| Penalty (10%) | 12/31/2018 | 29628.79 |

| If you pay by | Date | Amount | Penalty |
|---|---|---|---|
| First Payment Due: | 02/05/2018 | 6733.82 | |
| Second Payment Due: | 04/09/2018 | 6733.82 | 673.38 |
| Third Payment Due: | 06/11/2018 | 6733.81 | 673.38 |
| Fourth Payment Due: | 08/13/2018 | 6733.81 | 673.38 |

• **The Installment Plan: Installment payments may not commence after the first installment Due Date.** A grace period of five (5) days beginning with the due date is allowed for each installment. If not paid with in five (5) days beginning with the due date, a penalty of 10% will be added to each delinquent installment. **No** discounts are allowed on installment payments unless the full tax is paid during the discount period. **Note**: If you are paying **by installments**, you will be billed for subsequent payments.

• All property taxes unpaid as of **December 31, 2018** will be turned over to a collection agency. **Note**: If taxes are paid by mortgage company, please forward to same. If property was recently sold, please forward this bill to the new owner or contact the City of Bethlehem Tax Bureau at 610-865-7022.

• For your convenience, payment of this bill will be accepted at the **CITY OF BETHLEHEM TREASURER'S OFFICE** – 10 East Church Street, Bethlehem PA – 8:00 am to 4:15 pm – Monday to Friday (Treasurer's Office Phone : 610-865-7125) or place in **the 24 hour drop box** located in front of City Hall.

• Make Check payable to **City of Bethlehem. A fee of $20.00 will be charged for returned checks.**

• If paying in person, present both portions of bill. If paying by mail, your cancelled check is your receipt.

• Mail to: **City of Bethlehem, PO Box 410, Bethlehem PA 18016-0410** (Use envelope enclosed)
**Note - Mailed Payment must be postmarked on or before the Due Date.**
*Detach and return bottom portion when mailing your payment in the supplied envelope*




**City of Bethlehem**
Bureau of Financial Services
10 East Church Street
Bethlehem, PA 18018-6025

| If you pay by | Date | Amount | Penalty |
|---|---|---|---|
| First Payment Due: | 02/05/2018 | 6733.82 | |
| Second Payment Due: | 04/09/2018 | 6733.82 | 673.38 |
| Third Payment Due: | 06/11/2018 | 6733.81 | 673.38 |
| Fourth Payment Due: | 08/13/2018 | 6733.81 | 673.38 |

| Tax | If paid by | Amount Due |
|---|---|---|
| Discount (2%) | 03/30/2018 | 26396.55 |
| Base | 05/31/2018 | 26935.26 |
| Penalty (10%) | 12/31/2018 | 29628.79 |

\*\*AUTO\*\*SCH 5-DIGIT 18017 C 64651 P 56619 19665 1 AV 9.37P



WILLOW INVESTMENT LLC

2285 SCHOENERSVILLE RD STE 210
BETHLEHEM PA 18017-7450

Account Number: 113-012250
Property Address: 2425 SCHOENERSVILLE
RD
**Make Check Payable to: City of Bethlehem**
Mail to address on back of stub

