## **Exhibit 1**

Bidding Procedures

**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE BON-TON STORES, INC., *et al.*,[1] | Case No. 18-10248 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 18** |

**BIDDING PROCEDURES**

On February 4, 2018, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On March 12, 2018, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered an order (the "<u>Bidding Procedures Order</u>"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, these "<u>Bidding Procedures</u>") to be employed by the Debtors in connection with the proposed sale (the "<u>Sale</u>") of all or substantially all of the Debtors' assets (collectively, the "<u>Assets</u>"), or subset(s) thereof, free and clear of all liens, claims, encumbrances, and other interests other than those permitted by an applicable Stalking Horse Agreement (as defined below) (collectively, the "<u>Encumbrances</u>"), to a potential stalking horse purchaser (a "<u>Stalking Horse Purchaser</u>") or, absent a Stalking Horse Purchaser or in the event the Stalking Horse Purchaser is not the Successful Bidder, then to the Successful Bidder (as defined below), pursuant to a Purchase Agreement with such Successful Bidder.  A successful Stalking Horse Purchaser is referred to herein as a "Successful Bidder" for ease of reference.  These Bidding Procedures also contemplate solicitation of restructuring proposals, which shall be solicited on a parallel track and on the timeline contemplated hereby.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Bon-Ton Stores, Inc. (5229); The Bon-Ton Department Stores, Inc. (9309); The Bon-Ton Giftco, LLC (2805); Carson Pirie Scott II, Inc. (2140); Bon-Ton Distribution, LLC (5855); McRIL, LLC (5548); Bonstores Holdings One, LLC (8574); Bonstores Realty One, LLC (8931); Bonstores Holdings Two, LLC (8775); and Bonstores Realty Two, LLC (9075).  The headquarters for the above-captioned Debtors is 2801 East Market Street, Bldg. E, York, Pennsylvania 17402.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

(A)     **JAMIE BAIRD (212-364-5300; BAIRD@PJTPARTNERS.COM), JON WALTERS (212-364-1992; WALTERS@PJTPARTNERS.COM); AND VINIT KOTHARY (212-364-7947; KOTHARY@PJTPARTNERS.COM**

(B)     **ALL DUE DILIGENCE INQUIRIES SOLELY REGARDING THE DEBTORS' REAL ESTATE, INCLUDING FEE-OWNED REAL PROPERTIES AND NONRESIDENTIAL REAL PROPERTY LEASES, SHOULD BE DIRECTED TO THE DEBTORS' REAL ESTATE CONSULTANT, A&G REALTY PARTNERS, LLC, BY CONTACTING ANDREW GRAISER (516-946-8982; ANDY@AGREALTYPARTNERS.COM) AND MICHAEL JERBICH (773-294-5354; MICHAEL@AGREALTYPARTNERS.COM)**

**Summary of Important Dates and Deadlines**

| Date | Deadline |
|---|---|
| **March 19, 2018** | **Assumption Notice deadline** |
| **March 19, 2018** | **Deadline to Designate Proposed Stalking Horse Bid(s) (With Consent of DIP Administrative Agent, and Upon Consultation with Official Committee of Unsecured Creditors)** |
| **April 2, 2018 at 5:00 p.m.** | **Bid Deadline** |
| **April 4, 2018 at 5:00 p.m.** | **Deadline for Qualifying Bidder to Submit Revised Bid if its Initial Bid was Not Deemed a Qualifying Bid** |
| **April 6, 2018** | **Deadline for Debtors to Designate Baseline Bid** |
| **April 9, 2018 at 4:00 p.m. (ET)** | **Contract Objection Deadline**.  This objection deadline applies to all objections to the sale of the Assets, including all objections to the assumption and assignment of the Assumed Contracts (with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than a Stalking Horse Bidder) |

| | |
|---|---|
| **April 9, 2018 at 10:00 a.m. (ET)** | **Auction, to be conducted at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, or such other date and time as the Debtors, after consultation with the Baseline Bidder and the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids; provided that such other date and time is no earlier than two (2) business days following the delivery of such notice** |
| **April 9, 2018 at 4:00 p.m. (ET)** | **Sale Objection Deadline** |
| **As Soon as Reasonably Practicable Upon Completion of Auction** | **Deadline to File Notice of Successful Bidder** |
| **Within 24 hours of Conclusion of Auction** | **Deadline to Serve Notice of Successful Bidder and Successful Bidder's Adequate Assurance Information** |
| **April 11, 2018 at 10:30 a.m. (ET)** | **Sale Hearing (to the extent the Successful Bid contemplates a full-chain liquidation)** |
| **April 12, 2018 at 12:00 Noon (ET)** | **Debtors' Deadline to Reply to Sale Objections (if sale is for going concern)** |
| **Not later than two (2) hours prior to the commencement of the Sale Hearing** | **Adequate Assurance Objection Deadline for Successful Bidders Other Than the Stalking Horse Bidders and for Additional Contracts** |
| **April 13, 2018 at 10:30 a.m. (ET)** | **Sale Hearing (to the extent the Successful Bid contemplates a going concern sale)** |

**Adequate Assurance Information**: For the avoidance of doubt, the Successful Bidder's Adequate Assurance Information should contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the proposal, which to the extent reasonably available should include, in the event of a going concern sale, (i) the exact name of the entity which is going to be designated as the proposed assignee; (ii) the proposed assignee's and any guarantor's audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2015, 2016, and 2017; (iii) the number of stores the proposed assignee operates and all trade names that the proposed assignee uses; (iv) a statement setting forth the proposed assignees' intended use of the

premises; and (v) the proposed assignee's retail experience and experience operating anchor stores in a shopping center.

### 1.    Stalking Horse Purchaser

Pursuant to the Bidding Procedures Order, the Debtors are authorized to enter into a Purchase Agreement with a Stalking Horse (a "Stalking Horse Agreement") not later than two (2) business days prior to the Bid Deadline (as defined below).  In the event that the Debtors enter into a Stalking Horse Agreement, the Debtors will file with the Court and serve on the Sale Notice Parties (as defined in the Bidding Procedures Order) a notice that includes the following: (a) the identification of the Stalking Horse Purchaser; (b) a copy of the Stalking Horse Agreement; (c) the purchase price provided for in the Stalking Horse Agreement (the "Stalking Horse Purchase Price"); (d) the deposit paid by the Stalking Horse Purchaser; and (e) the amount of any Break-Up Fee or any Expense Reimbursement (each, as defined below).  Notwithstanding the foregoing, nothing herein or in the Bidding Procedures Order is intended or shall be deemed to approve, or authorize the Debtors to pay, any such Break-Up Fee or Expense Reimbursement, and approval of, and authorization for the Debtors to pay, any such Break-Up Fee and Expense Reimbursement, shall be subject to further order of the Court and, unless otherwise agreed by the parties or unless the Stalking Horse Purchaser is the Successful Bidder, subject to the Court's consideration at the appropriate time.

### 2.    Assets to be Sold

The Debtors shall offer for sale the Assets, provided that the Debtors, in consultation with the Consultation Parties, determine that the aggregate consideration offered by any bid, or combination of bids, for the Assets, satisfies the requirements set forth in these Bidding Procedures, including, without limitation, cash proceeds in an amount sufficient to pay in full in cash all outstanding obligations owed by the Debtors under the DIP Documents (as defined in the DIP Order) and all obligations under the Prepetition ABL Documents (as defined the DIP Order), to the extent any Prepetition ABL Obligations (as defined in the DIP Order) are still outstanding.  Potential Bidders may bid on all or any number or combination of the Assets.

More specifically, the Debtors will entertain, and pursue as appropriate, proposals that include, without limitation, Qualified Bids in the form of a Restructuring Term Sheet that provides for an appropriate cash infusion, in return for new equity in the reorganized Debtors, going concern bids for the Assets or a subset thereof, including with respect to leases and personal property, and bids put forth by liquidators seeking to liquidate the Debtors on an enterprise-wide level.

The available Assets are fully described in the Data Room (as defined below) maintained by the Debtors' investment banking advisors, which is accessible on the terms described herein.

### 3.    Participation Requirements

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "Potential Bidder") must first become a "Qualifying Bidder".  To become a Qualifying Bidder (and thus being able to conduct due diligence and gain access to the Debtors'

confidential electronic data room concerning the Assets (the "<u>Data Room</u>")), a Potential Bidder must submit to the Debtors and their advisors:

(a)     documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(b)     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder;

(c)     a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties (as defined below), that the interested party has a *bona fide* interest in consummating a sale restructuring transaction, as appropriate; and

(d)     sufficient information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties, to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale or restructuring transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, each of the Consultation Parties, or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and a Stalking Horse Agreement shall be considered a Qualifying Bid (as defined below); (ii) the administrative Agent (the "<u>DIP Administrative Agent</u>") and the Prepetition ABL Agent (as defined in the DIP Order) shall be   Qualifying Bidders and their credit bids, if any, will be considered Qualifying Bids; and (iii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

### 4.       <u>Bankruptcy Court Jurisdiction</u>

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction (as defined below) and the construction and enforcement of the contemplated transaction documents of such parties, (b) bring any such action or proceeding in

the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

5.    **Form of Agreement**

As set forth below, Potential Bidders intending to submit bids must include with their bids:

(a)    a statement that such Potential Bidder offers to purchase the Assets, or a number or combination of the Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in a Stalking Horse Agreement, if applicable; and

(b)    a term sheet that reflects material deviations from a Stalking Horse Agreement, if applicable, or in the alternative, material terms of a proposed restructuring or sale transaction.    In the case of a sale transaction, such term sheet must be unequivocally binding, as set forth below.

6.    **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to: Jamie  Baird  (212-364-5300;  baird@pjtpartners.com),  Jon  Walters  (212-364-1992; walters@pjtpartners.com); and Vinit Kothary (212-364-7947; Kothary@pjtpartners.com.  All due diligence inquiries that relate solely the Debtors' real estate, including fee-owned real properties and nonresidential real property leases, should be directed to the Debtors' real estate consultant, A&G Realty Partners, LLC, by contacting Andrew Graiser (516-946-8982; Andy@agrealtypartners.com)      and      Michael      Jerbich      (773-294-5354; Michael@agrealtypartners.com)

The due diligence period shall extend through and including the Bid Deadline. The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder; provided that the Debtors shall notify the Consultation Parties of any decision to withhold such information.  Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have

no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

## 7.    Bid Requirements

Other than in the case of (i) a bid submitted by the Stalking Horse Purchaser or (ii) a credit bid submitted by the DIP Administrative Agent or Prepetition ABL Administrative Agent, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements, as determined by the Debtors in consultation with the Consultation Parties (each, a "Bid Requirement"):

a.    be in writing;

b.    fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

c.    set forth the purchase price to be paid by such Qualifying Bidder or the material terms of a Restructuring Term Sheet;

d.    in the case of a proposed purchase of the Assets, not propose payment in any form other than cash (except as otherwise expressly set forth in these Bidding Procedures);

e.    state the liabilities proposed to be paid or assumed by such Qualifying Bidder, including any liabilities in connection with the Carson Pirie Scott Pension Plan (the "Pension Plan"), a defined benefit pension plan sponsored by The Bon-Ton Stores, Inc., a Debtor, and covered by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301 – 1461 (2012 & Supp. II 2014) (the "Pension Liabilities");

f.    state whether such Qualifying Bidder will assume sponsorship of and continue the Pension Plan in accordance with ERISA;

g.    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase the Assets, or a number or combination of the Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement, as applicable;

h.    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale (as applicable to Sales, only);

i.      state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the bid and provide written evidence in support thereof;

j.      contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve, within one (1) business day after such receipt, such information on any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information;

k.      identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the contemplated transaction(s);

l.      specify whether the Qualifying Bidder intends to operate all or a portion of the Debtors' business as a going concern, intends a full-chain liquidation, or contemplates the ongoing operation of certain stores and the closing of others;

m.      in the case of a bid that contemplates a full-chain liquidation, a commitment to commence such liquidation by April 13, 2018, and in the case of a bid that anticipates a going concern sale, a commitment to close the transactions contemplated by the proposal by April 16, 2018;

n.      not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

o.      in the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) any Stalking Horse Purchase Price, (B) any Break-Up Fee, (C) any Expense Reimbursement, and (D) $200,000.

p.      not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

q.      contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the

completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

r.      sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings and (ii) any regulatory and third-party approval required for the Qualifying Bidder to close the contemplated transactions, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's Purchase Agreement, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

s.      provides for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid (the "Back-Up Bid") after the Successful Bid (as defined below);

t.      includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the subject term sheet;

u.      provides a good faith cash deposit (the "Deposit") in an amount equal to five percent (5%) of the purchase price provided for in the proposal (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) to be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to the escrow agreement to be provided by the Debtors to the Qualifying Bidders (the "Escrow Agreement"); and

v.      provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the modified Purchase Agreement equal to the amount of the Deposit.

The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

01:22770206.7

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

### 8.    Bid Deadline

A Qualifying Bidder, other than any Stalking Horse Purchaser or the DIP Administrative Agent, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Notice Parties and Consultation Parties so as to be received on or before **April 2, 2018 at 5:00 p.m. (ET)** (the "Bid Deadline"); provided that the Debtors, with the consent of the DIP Administrative Agent, may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these chapter 11 cases indicating the same. **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

### 9.    Evaluation of Qualifying Bids

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all bids from Qualifying Bidders to each of the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than two (2) days prior to the Auction Date. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have until **April 4, 2018 at 5:00 p.m.** to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid for the Debtors; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

One (1) day prior to the Auction Date, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder"), and shall promptly notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

The Debtors, in determining the Baseline Bid, will assess the value of any non-cash consideration in determining the total value of a Qualifying Bid, including the assumption, if any, of the Pension Liabilities contemplated by each Qualifying Bid. The Debtors will also give appropriate consideration to any Qualifying Bid under which the Qualifying Bidder would assume sponsorship of and continue the Pension Plan in accordance with ERISA.

10. **No Qualifying Bids**

If no timely Qualifying Bids other than any Stalking Horse Purchaser's Qualifying Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Stalking Horse Purchaser be deemed the "Successful Bidder" (as defined herein) and that the Court approve the Stalking Horse Purchase Agreement and the transactions contemplated thereunder.

11. **Right to Credit Bid**

Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

Each of the DIP Administrative Agent and the Prepetition ABL Administrative Agent shall have the right to credit bid all or any portion of the aggregate amount of its applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid.

If there is no going concern sale for substantially all of the Debtors' assets, bidding by the Debtors' landlords shall be governed by the following procedures:

(a) Any of the Debtors' landlords shall be considered a Qualifying Bidder for the purpose of bidding on any non-residential real property lease to which that landlord (or its affiliate) is a party;

(b) Any of the Debtors' landlords may credit bid some or all of their undisputed cure amounts on any applicable lease; and

Only the Debtors' landlords that submit cash bids shall be required to comply with the deposit requirements as set forth in these Bidding Procedures.

12. **Auction**

If Debtors timely receive one or more Qualifying Bids other than any Stalking Horse Purchaser's Qualifying Bid, then the Debtors shall conduct an auction (the "Auction"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors: (a) the terms of the APA and any Stalking Horse APA requested by each bidder; (b) the extent to which such terms are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates, taking into account any Break-Up Fee and any Expense Reimbursement provided for in

any applicable Stalking Horse APA; (f) the impact on employees, trade creditors and landlords; and (g) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

(a)    the Auction shall commence on **April 9, 2018 at 10:00 a.m. (ET)** (the "Auction Date"), at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064;

(b)    only a Stalking Horse Purchaser, the DIP Administrative Agent and the other Qualifying Bidders with Qualifying Bids (collectively, the "Auction Bidders") shall be entitled to make any subsequent bids at the Auction;

(c)    the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative;

(d)    only the Debtors, the Auction Bidders, the Consultation Parties, the Debtors' landlords and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any such landlords and creditors provide counsel for the Debtors three day's written notice of their intent to attend the Auction by contacting Debtors' counsel, Elizabeth Justison (ejustison@ycst.com) and Jordan Sazant (jsazant@ycst.com);

(e)    the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)    the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale;

(g)    bidding shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least 1% of the Baseline Bid, or such amount that the Debtors, in an exercise of their business judgment and in consultation with the Consultation Parties, determine will maximize value for the subject Assets, provided that: (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of (A) any Break-Up Fee and (B) any Expense Reimbursement, if applicable; (iii) any successive bid made by any Stalking Horse Purchaser shall only be required to equal the sum of the amount of (A) the Baseline Bid or the then-highest and best bid, as applicable, and (B) 1% of the Baseline Bid, less the sum of the amount of (C) any Break-Up Fee and (D) any Expense Reimbursement, if applicable; and (iv) the Debtors shall retain the right to modify the bid increment requirements at the Auction;

(h)    the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)     the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order and the DIP Order (as defined in the Bidding Procedures Order), and (ii) disclosed to the Auction Bidders;

(k)     each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(l)     Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or any Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Auction Bidders' respective Purchase Agreements or any Stalking Horse Agreement, as applicable, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(m)    the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal or any Stalking Horse Agreement, as applicable, as may be amended

during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(n)     upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction, which may be a Stalking Horse Agreement (the "Successful Bid").   In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the nature and impact of any variances from the form Purchase Agreement requested by each bidder, and the net benefit to the Debtors' estates. In addition, the Debtors, in determining the Successful Bid, will assess the value of any non-cash consideration in determining the total value of a Qualifying Bid, including the assumption, if any, of the Pension Liabilities contemplated by each Qualifying Bid. The Debtors will give appropriate consideration to any Qualifying Bid under which the Qualifying Bidder would assume sponsorship of and continue the Pension Plan in accordance with ERISA.   The bidder submitting such Successful Bid, which may be the Stalking Horse Purchaser, shall become the "Successful Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable.   The Debtors may, in their sole discretion, designate Back-Up Bids (and the corresponding Back-Up Bidders) to purchase the Assets in the event that the Successful Bidder does not close the Sale.   The terms of each Successful Bid and Back-Up Bid shall be acceptable to the DIP Administrative Agent and shall, among other things, provide for cash proceeds in an amount sufficient to repay in full in cash all of the Debtors' obligations under the DIP Documents (as defined in in the DIP Order) and all of the Debtors' obligations under the Prepetition ABL Documents (as defined in the DIP Order), to the extent any Prepetition ABL Obligations are still outstanding; and

(o)     prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED.  EACH QUALIFYING BID THAT IS NOT THE SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

### 13.    **Sale Hearing**

The Successful Bid and any Back-Up Bid (or if no Qualifying Bid other than that of any Stalking Horse Purchaser is received, then the Stalking Horse Agreement) will be subject to approval by the Court.  **If the Successful Bid does not contemplate a going concern sale, then the hearing to approve such Successful Bid and any Back-Up Bid (the "Sale Hearing") shall take place, subject to the Court's availability, on April 11, 2018 at 10:30 a.m. (ET).  If the Successful Bid contemplates a going concern sale, then the Sale Hearing shall take place, subject to the Court's availability, on April 13, 2018 at 10:30 a.m. (ET)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a hearing agenda or notice on the docket of the Debtors' chapter 11 cases. **For the avoidance of doubt, by no later than the time of announcement of the Baseline Bid for the Auction, the Debtors may determine, in consultation with the Consultation Parties, to withdraw the Assets or any subset thereof, intellectual property, including owned real estate or nonresidential real property leases, from the Auction and Sale process, and adjourn the Sale Hearing with respect to these assets on the terms set forth herein.**

At the Sale Hearing, the Debtors will seek entry of an order that, among other things:  (i) authorizes and approves the Sale to the Successful Bidder, pursuant to the terms and conditions set forth in the Stalking Horse Agreement or such subject Purchase Agreement executed by the Successful Bidder, as applicable; (ii) finding that the Stalking Horse Purchaser or Successful Bidder, as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; (iii) as appropriate, exempting the Sale(s) and conveyance(s) of the Assets from any transfer tax, stamp tax or similar tax, or deposit under any applicable bulk sales statute; and (iv) unless otherwise ordered by the Court, directing that all cash proceeds generated from the sale of any Assets shall be paid to the DIP Administrative Agent upon the closing of such sale(s) for application against the obligations owing by the Debtors under the DIP Documents in accordance with the terms and conditions of the DIP Order and the DIP Documents, and thereafter, against the obligations owing by the Debtors under the Prepetition ABL Documents (to the extent that such obligations are still outstanding), in accordance with the terms and conditions of the Prepetition ABL Documents, until such time as all DIP Obligations (as defined in the DIP Order) and Prepetition ABL Obligations have been paid in full in cash in accordance with the terms of the DIP Documents, the DIP Order, and the Prepetition ABL Documents, as applicable.

### 14.    **Back-Up Bidder**

Notwithstanding any of the foregoing, in the event that the Successful Bidder fails (i) in the case of a going concern sale, to close the Sale by April 16, 2018 (or such date as may be extended by the Debtors with the agreement of the Back-Up Bidder and the consent of the DIP Administrative Agent) or (ii) in the case of a full-chain liquidation, to commence the liquidation by April 13, 2018 (or such date as may be extended by the Debtors with the agreement of the Back-Up Bidder and the consent of the DIP Administrative Agent), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors will be authorized, but not directed, to close the Sale to the Back-Up

Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

## 15.    Return of Deposits

All Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder no later than five (5) business days following the closing of the Sale. The deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or any Stalking Horse Agreement, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform

## 16.    Notice and Consultation Parties

(a)    The term "Notice Parties" as used in these Bidding Procedures shall mean: (i) the Debtors (Attn: Holly Etlin, Chief Restructuring Officer; hetlin@alixpartners.com); (ii) counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP (Attn: Kelley A. Cornish, Esq., Elizabeth R. McColm, Esq., and Alexander Woolverton, Esq.; kcornish@paulweiss.com; emccolm@paulweiss.com; awoolverton@paulweiss.com) and (b) Young Conaway Stargatt & Taylor, LLP (Attn: Pauline K. Morgan, Esq., Sean T. Greecher, Esq., and Andrew L. Magaziner., Esq; pmorgan@ycst.com, sgreecher@ycst.com, and amagaziner@ycst.com); and (iii) investment banking advisor to the Debtors, PJT Partners LP (Attn: Jamie Baird, Jon Walters, and Vinit Kothary; baird@pjtpartners.com, walters@pjtpartners.com, Kothary@pjtpartners.com.

(b)    The term "Consultation Parties" as used in these Bidding Procedures shall mean: (i) counsel to the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee"); (ii) counsel to the Administrative Agent; (iii) counsel to the DIP Tranche A-1 Documentation Agent; (iv) counsel to the Ad Hoc Noteholder Group; and (v) counsel to the Second Lien Trustee; provided, that in the event any Consultation Party (or in the case of the Creditors' Committee, any of its members in their individual capacities) submits, directly or indirectly, a going-concern and/or liquidation bid with respect to any Asset(s), such Consultation Party shall not be a Consultation Party with respect to any going-concern or liquidation bids with respect to such Asset(s), as the case may be, unless such bid is formally and irrevocably withdrawn in writing to each of the other Consultation Parties.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business

judgment; provided, however, that the foregoing shall not impact any consent rights that the DIP Administrative Agent may have under the DIP Order [Docket No. ____] and any related final order (together, the "DIP Order"), the DIP Documents (as defined in the DIP Order), or otherwise.

In the event that any Consultation Party or any member of the Creditors' Committee or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of the Creditors' Committee submits a Qualifying Bid, the Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

### 17. Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing; provided, however, that any changes to the dates and deadlines set forth herein shall (i) comply with the milestones contained in the DIP Order or (ii) shall be made only with the consent of the DIP Administrative Agent.

### 18. DIP Order

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise: (i) the right of the DIP Administrative Agent to consent to the sale of any portion of its collateral, including, without limitation, any Assets, on terms and conditions acceptable to the DIP Administrative Agent, are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures; (ii) unless otherwise ordered by the Court, all cash proceeds generated from the sale of any Assets shall be paid to the DIP Administrative Agent upon the closing of such sale for permanent application against the obligations owing by the Debtors under the DIP Documents in accordance with the terms and conditions of the DIP Order and the DIP Documents and thereafter, against the obligations owing by the Debtors under the Prepetition ABL Documents(to the extent any such obligations are still outstanding), in accordance with the terms and conditions of the Prepetition ABL Documents, until such time as all DIP Obligations and Prepetition ABL Obligations have been paid in full in cash in accordance with the terms and conditions of the DIP Documents, the DIP Order and the Prepetition ABL Documents, as applicable; and (iii) nothing in these Bidding Procedures shall

amend, modify, or impair any provision of the DIP Order, or the rights of the Debtors or the DIP Administrative Agent thereunder.