# **EXHIBIT 1**

**Master Services Agreement**

## MASTER SERVICES AGREEMENT

This Master Services Agreement ("Agreement") is made as of July 18, 2014 (hereinafter "Effective Date") by and between **Bridge Solutions Group, Inc.**, a corporation organized under the laws of New Jersey, having a principal place of business at 1 Bridge Plaza North, Suite 180, Fort Lee, NJ 07024 (hereinafter "Bridge Solutions"), and **The Bon-Ton Department Stores, Inc.**, a corporation organized under the laws of Pennsylvania and having a principal place of business at 601 Building A Memory Lane, York, PA 17402 (hereinafter "Client").

### 1. RECITALS

WHEREAS Bridge Solutions is in the business of providing, and Client wishes to engage Bridge Solutions to provide, Professional Services including but not limited to development, consulting and support services for Client's technology and computer systems, which services shall be more particularly described in one or more Statement(s) of Work (SOW) agreed to and executed by both parties. By entering into this Agreement, Bridge Solutions agrees to perform the designated services during the term of this Agreement, subject to the terms and conditions of this Agreement set forth below and in the applicable Statement(s) of Work.

### 2. SERVICES/SCOPE OF WORK

2.1. Bridge Solutions will provide Professional Services as specified by individual **Statement(s) of Work (SOW)**, as attached hereto and made a part of this Agreement (the "Services").

2.2. In the event of a conflict between this Agreement and any term contained in any Statement of Work, such term of the Statement of Work shall control, provided that all Statements of Work entered into between Bridge Solutions and Client shall be subject to, and entered into pursuant to, the terms and conditions of this Agreement.

2.3. Any modification to the scope of the Services to be performed pursuant to any Statement of Work shall be agreed to by the parties in writing, and Bridge Solutions shall have no obligation to perform such changed Services until the parties have agreed in writing upon the effect of such changes to the fees and Deliverable schedules provided in such Statement of Work.

2.4. If Bridge Solutions shall elect to perform such changed Services before the parties have made such agreements in writing, Bridge Solutions may expend such time for performance as it deems necessary and reasonable to perform the Services, and all terms and conditions of such performance shall be governed by this Agreement and the applicable Statement of Work.

3. RELATIONSHIP OF THE PARTIES

3.1. The relationship of each of the parties hereto to the other party shall be that of an independent contractor, and nothing contained herein or in any Statement of Work shall be deemed or construed to create any kind of joint venture, partnership, employment, agency, or other relationship between the parties for any purpose.

3.2. Neither party shall have the authority to bind, represent or commit the other party in any way, and neither party shall have the authority to assume or create any obligation or responsibility, express or implied, on behalf of, or in the name of the other party, or to enter into contracts on behalf of the other party hereto.

3.3. Notwithstanding the foregoing, with Client's written permission, which shall not be unreasonably withheld, Bridge Solutions shall be permitted to use Client's name in its resume client list, case studies, and in other promotional material, including, but not limited to, press releases, brochures, reports, letters, white papers, electronic media such as e-mail

or Web pages, and other materials or media as may be selected by Bridge Solutions.

## 4. INVOICING AND PAYMENT

Client shall pay Bridge Solutions such fees for the Services provided in accordance with the applicable Statement of Work therefore. Bridge Solutions shall invoice Client monthly for Services rendered with sufficient detail to describe Services, in a format agreeable to Client. Monthly invoices shall be submitted by Bridge Solutions no later than the 15th day of the month following the billing period. Client shall pay to Bridge Solutions such invoiced amount within thirty (30) days of the date of such invoice. Any amount remaining unpaid after the expiration of such thirty (30) day period shall accrue interest at a rate of the lesser of (a) one and one-half percent (1.5%) per month or (b) the highest rate allowed by law.

## 5. REIMBURSEMENT OF EXPENSES

Client will reimburse Bridge Solutions for pre-approved, reasonable expenses incurred in the performance of its obligations under the Statement(s) of Work associated with this agreement.

## 6. REIMBURSEMENT OF OTHER FEES AND EXPENSES

In the event that Client fails to make any payments to Bridge Solutions pursuant to this Agreement or any Statement of Work under this agreement, Client shall reimburse Bridge Solutions for any and all costs of collection reasonably incurred by Bridge Solutions, including, but not limited to, court costs and reasonable attorneys' fees.

## 7. TERM AND TERMINATION

    **7.1.** It is the intention of both parties that this Agreement shall commence as of the Effective Date and continue for a period of one year (the "Initial Term") with renewable one-year terms ("Renewal Term(s)") thereafter. The

Agreement will be automatically renewed after the Initial Term and after each Renewal Term, if any, until otherwise terminated by either party under the terms set forth in this Section 7.

7.2. Either party may terminate either a single Statement of Work or this Agreement in its entirety (and all Statements of Work) at the end of the Initial Term or any Renewal Term for any reason by giving the other party sixty (60) days written notice of such termination; provided that upon receipt of such notice from Bridge Solutions, Client may elect to waive such notice period and have the Agreement or Statement(s) of Work, as applicable, terminate immediately.

7.3. In addition to any other remedies it may have, either party may terminate this Agreement for a breach of a material term of this Agreement by the other party, including failure to submit invoices or failure to pay fees as specified in section 4 of this Agreement, upon giving the other party thirty (30) days written notice identifying specifically the alleged breach, provided that the breaching party does not cure such breach within the thirty (30) day period or such longer term as the parties shall mutually agree in writing.

7.4. Either party may terminate this Agreement immediately upon written notice thereof to the other party if such other party makes an assignment for the benefit of creditors, becomes subject to a bankruptcy proceeding, or is subject to the appointment of a receiver.

7.5. Upon termination of this Agreement Client agrees to pay Bridge Solutions for any and all work performed under the Agreement up until the point of termination and Bridge Solutions agrees to provide knowledge transfer and turnover sufficient up to the point of termination to allow Client to assume support responsibilities for all Deliverables as defined in Section 10.1.

7.6. Upon termination of this Agreement by either party, each party shall promptly return to the other party all data, materials, and other properties of the other party held by each party in accordance with Section 11 hereof.

Notwithstanding any provision herein to the contrary, upon termination of this Agreement, Client shall be the owner of all rights in and to the Deliverables as that term is defined in Section 10.1.

## 8. RESPONSIBILITIES OF CLIENT

**8.1.** For Services performed at a Client's location, Client shall provide appropriate computer hardware, software and communications resources, system and user documentation, office space, telephone service, copying, facsimile or postage and general office supplies and support to Bridge Solutions as necessary to perform the Services and as agreed upon between Client and Bridge Solutions.

**8.2.** If a Statement of Work sets forth certain Client responsibilities regarding the Services, Client shall assume those responsibilities, including the procurement and the evaluation of the appropriate capacity of any third party products or services. Client understands that Bridge Solutions' performance is contingent on Client's timely and reasonable performance of its responsibilities and its timely decisions and approvals.

**8.3.** Bridge Solutions may rely on all decisions and approvals of Client personnel identified by Client to Bridge Solutions in writing ("Authorized Client Representatives"). In the event that Client fails to perform any of its duties hereunder or as set forth in any Statement of Work, Bridge Solutions shall be relieved of any of its related and dependent obligations of performance hereunder or pursuant to such Statement of Work until such time as Client shall perform its duties.

## 9. RESPONSIBILITIES OF BRIDGE SOLUTIONS

Bridge Solutions shall, whenever on Client's premises, obey all reasonable policies regarding conduct required by Client. Bridge Solutions' personnel assigned to perform Services shall make all reasonable efforts to attend any requested policy or technology training, at Client's expense, subject to all applicable rate schedules set

forth in any Statements of Work. Bridge Solutions shall, whenever connected to Client's network, adhere to Client's Network Security and Acceptable Use policies.

## 10. OWNERSHIP OF DELIVERABLES - LICENSE RIGHTS

**10.1** All software programs, components, modifications and improvements to software programs, the source and object codes related thereto, and the technology and technical information related to such programs and components, and all other deliverable items generated by Bridge Solutions for Client under this Agreement, or pursuant to any Statement of Work (collectively, "Deliverables") shall be the exclusive property of Client unless otherwise explicitly stated in the Statement of Work. Client's ownership rights include, without implied limitation, the right to improve, modify, enhance and further develop the Deliverable.

**10.2** From time to time, Client may elect to license software from Bridge Solutions that has been independently developed by Bridge Solutions for sale in the marketplace ("Licensed Deliverable"). The terms of any such licensing will be explicitly defined in a separate agreement.

**10.3** Notwithstanding the foregoing, Bridge Solutions shall be free to use its general knowledge, skills and experience, and any ideas, concepts, know how and techniques related to Bridge Solutions' consulting under this Agreement in any manner desired by Bridge Solutions, including, but not limited to, in the course of providing services on other engagements (subject to Bridge Solutions' confidentiality obligations as set forth in Section 11 hereof).

## 11. CONFIDENTIALITY

**11.1.** Each party agrees that any information concerning the other's business activities, products, research and technical knowledge disclosed by a party that is identified in writing as "Confidential Information" shall not be

duplicated or disclosed to any other party, unless such duplication or disclosure is authorized by the disclosing party. Each party shall protect the confidentiality of the Confidential Information in the same manner as it protects its own confidential information of like kind, and shall restrict access to such Confidential Information to the receiving party's personnel on a need-to-know basis.

11.2. Bridge Solutions acknowledges that by the nature of the work it will be granted access to Client's customer data and Client's associate data. Access to and use of such data is governed by strict policy related to security and confidentiality. Bridge Solutions agrees to abide by all Client's data security policies and will promptly notify Client's CIO or VP of Application Systems of any violation of or exceptions to these policies.

11.3. Nothing in this Agreement shall restrict either party's use of information (including, but not limited to, ideas, concepts, know-how, techniques, and methodologies) that: (a) is or becomes publicly available through no breach of this Agreement; (b) is independently developed by it, as evidenced by written documentation; (c) is previously known to it without obligation of confidence, as evidenced by written documentation; or (d) is acquired by it from a third party which is not, to its knowledge, under an obligation of confidence with respect to such information.

11.4. In the event either party receives a subpoena or other validly issued administrative or judicial process requesting Confidential Information of the other party, the recipient shall promptly notify the other party of such receipt to enable such other party a reasonable opportunity to object to or seek a protective order with respect to such disclosure and may, thereafter, comply with such subpoena or process to the extent permitted by law.

11.5. All Confidential Information shall be returned to the party that disclosed it to the receiving party or be destroyed upon the earlier of (a) completion of the Services or (b) the discloser's request. Bridge Solutions may retain,

subject to the obligations of this Section 11, copies of the Confidential Information for record keeping purposes.

**11.6.** The obligations of confidentiality under this provision shall survive termination of this Agreement for a period of three (3) years. The parties acknowledge that damages in the event of breach of this confidentiality provision by a receiving party will be difficult to ascertain, and it is therefore agreed that notwithstanding any other provision of this Agreement to the contrary, a disclosing party, in addition to, and without limiting, any other remedy or right it may have, shall have the right to equitable relief, including without limitation, injunctive relief issued by a court of competent jurisdiction.

## 12. PERSONNEL

**12.1.** In recognition that Bridge Solutions personnel performing under this Agreement may perform similar services for others, neither this Agreement nor any Statement of Work shall prevent Bridge Solutions from providing services or developing materials that are competitive with those developed or provided hereunder regardless of any similarity to such services or materials. All persons Bridge Solutions furnishes to provide the Services to Client shall be the employees or subcontractors of Bridge Solutions and shall be neither employees nor agents of Client. Bridge Solutions shall determine the staffing and assignment of its personnel for the performance of all Services. In the event that a Bridge Solutions associate is deemed unsatisfactory by Client management, Bridge Solutions agrees to work in good faith with Client to resolve the problem or provide an alternative resource.

**12.2.** Neither party shall, during the term of this Agreement and for a period of twelve (12) months following termination, solicit the employment of the other party's employees either individually or through another party or employee without express written consent from the other party. Each party

shall notify the other party prior to any discussion with an employee regarding employment in violation of this provision.

**12.3.** If either party breaches Section 12.2 and such breach results in the hiring of an employee of the other party, the breaching party shall pay as liquidated damages, and not as a penalty, the sum of $50,000 per employee. The parties agree and acknowledge that this liquidated damages provision, and the agreed upon liquidated damages amount, is fair and reasonable based upon the difficulty of ascertaining an estimate of actual damages to the non-breaching party under this provision, and that notwithstanding anything else to the contrary contained in this Agreement, such liquidated damages remedy shall be the sole and exclusive remedy.

**12.4.** Each party shall be solely responsible for worker's compensation claims brought by its respective employees, and will not hold the other liable for same.

## 13. WARRANTIES

**13.1.** (a) Bridge Solutions warrants to Client that, for a period of ninety (90) days from the completion and acceptance of any Services, acceptance of which shall be delineated pursuant to the applicable Statement of Work, such Services shall be performed in a workmanlike manner in accordance with applicable commercial standards, and the Deliverables delivered pursuant to a particular Statement of Work shall perform in accordance with the specifications therefore as set forth in such applicable Statement of Work. Acceptance by Client indicates acceptance of services to work on all hardware platforms used by the Client.

(b) Bridge Solutions warrants to Client that all work performed under this Agreement has been independently developed and is not the property of any other party.

(c) Bridge Solutions warrants that all personnel that it assigns to provide services to Client under this Agreement or any SOW shall have the requisite skill, training and knowledge to provide said services.

Client accepts sole responsibility for the use of the Deliverables hereunder or pursuant to any Statement of Work to achieve Client's intended results and the results actually obtained from such Deliverables.

13.2. The foregoing warranty shall apply to the Services performed by Bridge Solutions provided that (a) no software or materials that constitute Deliverables hereunder have been modified by Client, unless authorized by Bridge Solutions in writing, and in accordance with information provided by Bridge Solutions; (b) there has been no change in the computer equipment on which Bridge Solutions installed the software, unless authorized by Bridge Solutions in writing and such reinstallation is done in accordance with information provided by Bridge Solutions; (c) the computer equipment has sufficient capacity, is in good operating order, and is installed in a suitable operating environment; (d) the nonconformity was not caused by Client or its employees or agents or other third party unless authorized by Bridge Solutions; (e) Client promptly notifies Bridge Solutions within the warranty period set forth in Section 13.1 hereof of the nonconformity upon the discovery thereof by Client; and (f) all fees due to Bridge Solutions have been paid.

13.3. In the event of a breach of a warranty set forth in Section 13.1, and provided that all conditions set forth in Section 13.2 hereof have been met, Bridge Solutions will use commercially reasonable efforts to cause the Services and Deliverables, as applicable, to comply with the foregoing warranties.

13.4. THE FOREGOING WARRANTIES ARE BRIDGE SOLUTIONS'S ONLY WARRANTIES CONCERNING THE SERVICES AND ANY DELIVERABLE, AND ARE MADE FOR THE BENEFIT OF CLIENT ONLY, IN LIEU OF ALL OTHER WARRANTIES AND

REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THAT ANY ERRORS, MALFUNCTIONS, OR DEFECTS IN THE DELIVERABLES CAN OR WILL BE CORRECTED, OR ANY IMPLIED WARRANTIES OF MERCHANTABILITY, INFORMATIONAL CONTENT, OR FITNESS FOR A PARTICULAR PURPOSE.

### 14. LIMITATION OF LIABILITY

Bridge Solutions' liability (whether in contract, tort, negligence, strict liability, or by statute or otherwise) to Client or to any third party concerning performance or non-performance or otherwise related to this Agreement or any Statement of Work, shall in the aggregate be limited to direct and actual damages, but in no event shall such liability exceed the amount of fees received by Bridge Solutions hereunder for the portion of the Services giving rise to such claim. Except as set forth in Section 22 hereof, Bridge Solutions shall have no liability or obligation to Client as the result of the infringement of any proprietary rights of any third party as a result of or otherwise related to this Agreement, any Statement of Work, or the performance of any Services thereunder.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, SPECIAL, EXEMPLARY OR INDIRECT DAMAGES OR EXPENSES (INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR OTHER ECONOMIC LOSS, LOST REIMBURSEMENTS, LOST DATA, OR LOST SAVINGS) EVEN IF BRIDGE SOLUTIONS WAS ADVISED OF THE POSSIBILITY OF THE OCCURRENCE OF SUCH DAMAGES.

### 15. TAXES

Client shall pay all taxes, however designated and in addition to any charges payable hereunder, incurred in connection with or as a result of this Agreement, any Statement of Work, or the performance of the Services, including without limitation state and local privilege, excise, sales and use taxes, except any real estate tax, franchise tax, or tax based on Bridge Solutions' income. Bridge Solutions shall

defend, indemnify and hold harmless Client against any fine, penalty, additional tax or interest that may be assessed or levied as a result of the failure of Bridge Solutions to remit such taxes or file any return, form, or information statement that Bridge Solutions may be required to file by any government agency.

## 16. ASSIGNMENT

Neither party shall assign this Agreement without the other party's written consent, which shall not be unreasonably withheld.

## 17. ENTIRE AGREEMENT

This Agreement and any and all Statements of Work constitute the entire agreement of the parties, and supersede any and all prior oral or written negotiations, communications and agreements made by or on behalf of the parties relating to the subject matter thereof. This Agreement and any and all Statements of Work shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

## 18. AMENDMENTS

Any amendments to this Agreement must be in writing signed by both parties hereto.

## 19. SEVERABILITY

If any term or provision of this Agreement is found by a court of competent jurisdiction to be illegal, invalid or otherwise unenforceable, such term or provision shall not affect the other terms or provisions hereof or the whole of this Agreement, but such term or provision shall be deemed modified to the extent necessary in the court's opinion to render such term or provision enforceable, and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent the intent and the agreements of the parties.

## 20. FORCE MAJEURE

Except for failure to make payments when due, neither party shall be liable for loss or damage suffered as result of any delay or failure in performance under this Agreement; or interruption of performance resulting directly or indirectly from acts of God, civil or military authority, acts of public enemy, war, riots, civil disturbance, insurrections, accidents, fire, explosions, earthquakes, floods, water, wind, or lightning to the extent such events are beyond the reasonable control of the party claiming excuse from liability resulting therefrom.

## 21. DATA BACK-UP

Client acknowledges and agrees that the use of computer products is accompanied by a risk of loss of stored data and agrees therefore to assume all responsibility for the back-up of its own data, except to the extent that any loss of data is caused by the gross negligence or willful misconduct of Bridge Solutions, in which event, Bridge Solutions shall be liable to Client for Client's direct damages, limited however, as provided by Section 14. Bridge Solutions is responsible for maintaining an appropriate backup and disaster recovery plan that involves at a minimum daily backups of up all undelivered work-in-progress that is not located on Client's computer systems. Notwithstanding Section 20, a Force Majeure event shall not excuse Bridge Solutions from its obligations under this section. Except as otherwise provided in this Section 21, Client hereby releases Bridge Solutions from any liability for damages, losses, and expenses arising from the loss of Client's stored data from any and all causes.

## 22. USE OF THIRD PARTY TOOLS

In the course of the development of the Deliverables hereunder or pursuant to any Statement of Work, Bridge Solutions may use third party tools for such development purposes. Bridge Solutions shall have no liability to Client or any other party for any damages, expenses, or liabilities arising from the use of such third party tools, provided however that if any action or proceeding brought against Client is based on

a claim of copyright, trade secret or patent infringement arising out of Bridge Solutions' use of the third party tools, Bridge Solutions shall, at its own expense, defend such action or proceeding and hold harmless Client, its parent and affiliated companies and each of their officers, agents, employees, assigns, and successors in interest, or any of them, from and against any and all liability, and pay all damages, costs, losses, claims, demands, reasonable attorneys' fees, and expenses, or any of them, arising out of such action or proceeding.

## 23. NOTICES

23.1. All notices provided for or required by this Agreement shall be in writing and shall be delivered personally to the other designated party; or mailed by certified or registered mail, return receipt requested; or delivered by a recognized national courier service, as follows:

**If to Client:**

The Bon-Ton Department Stores, Inc.
601 Building A, Memory Lane,
York, PA 17402
Attn: James Lance, Senior Vice President – CIO

With a copy to:
The Bon-Ton Department Stores, Inc.
2801 E. Market St.
York, PA 17402
Attn: General Counsel

**If to Bridge Solutions:**

Bridge Solutions Group, Inc.
1 Bridge Plaza North, Suite 180
Fort Lee, NJ 07024
Attn: Doug Brochu, CEO

23.2. Notices delivered pursuant to this Section 23 hereof shall be deemed given:

23.2.1. at the time delivered, if personally delivered;

    **23.2.2.** three (3) business days after being deposited in the mail, if mailed;

    **23.2.3.** and one (1) business day after timely delivery to the courier, if by overnight courier service.

**23.3.**    Either party hereto may change the address to which notice is to be sent by written notice to the other party in accordance with the provisions of this Section 23.

## 24. SECTION HEADINGS

The Section headings of this Agreement are for the convenience of the parties only and in no way alter, modify, amend, limit, or restrict the contractual obligations of the parties.

## 25. COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

## 26. AUTHORITY; NO VIOLATION

The signatory for each party warrants that he/she has the authority to execute this Agreement as that party's binding agent and that this Agreement does not violate any law, agreement or understanding by which the party is bound.

## 27. INSURANCE

(a) Bridge Solutions shall, at its own expense, obtain and maintain in full force and effect at all times during the Term of this Agreement, policies of insurance with insurance companies having a rating of at least A-VII or better in the current Best's Insurance Reports published by A.M. Best and adequate to fully protect Client as well as Bridge Solutions from and against all expenses, claims, actions, liabilities and losses related to the subjects covered by the following policies of insurance:

    (i) Workers' Compensation insurance covering all costs, benefits and liabilities under Workers' Compensation and similar laws which may accrue in favor of any person employed by Bridge Solutions for all states in which Bridge Solutions operates, and Employer's Liability insurance with limits of liability of at least $500,000 per accident or disease and $500,000 aggregate by disease.

 (ii) Automobile Liability insurance, for owned, non-owned and hired vehicles used in connection with the Services to be performed under this Agreement, with limits of at least $500,000 for bodily injury and property damage combined. If only private passenger vehicles are owned or will be used in conjunction with this Agreement, $500,000 combined single limit of liability is acceptable. If no vehicles are owned or leased by Bridge Solutions, the Commercial General Liability insurance shall be extended to provide insurance for non-owned and hired automobiles. Limits of liability requirements may be satisfied by a combination of Automobile Liability and Umbrella Excess Liability policies.

 (iii) Commercial General Liability insurance, including by not limited to, premises/operations liability, contractual liability, personal and advertising injury liability, and products and completed operations liability, with limits of at least $1,000,000 per occurrence and $2,000,000 in the aggregate.

 (iv) Professional Liability insurance, including errors and omissions coverage, with limits of at least $1,000,000 per occurrence.

(b) Bridge Solutions shall furnish Client with a certificate of insurance upon the execution of this Agreement and thereafter upon request.

(c) Failure to obtain and maintain required insurance shall not relieve Bridge Solutions of any obligation contained in this Agreement. Additionally, any approval by Client of any of Bridge Solutions' insurance policies shall not relieve Bridge Solutions of any obligation contained in this Agreement, including liability for claims in excess of described limits.

## 28. SURVIVAL

Upon termination or expiration of this Agreement, the following provisions shall continue and survive in full force and effect: Sections 7, 10 through 15, 17, 18, 20, 22, 23, 24 and 28.

*IN WITNESS WHEREOF, the parties have executed this Agreement.*

**THE BON-TON DEPARTMENT STORES, INC.**

By: _DW Ral_ (signature)

Name: _Daniel W. Gerard_

Title: _DVP, Application Systems_

Date: _7/12/14_

**BRIDGE SOLUTIONS GROUP, INC.**

By: _Doug B_ (signature)

Name: ___Douglas Brochu___

Title: __CEO__

Date: ___7/11/14___