## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE BON-TON STORES, INC., e*t al.,*[1] | Case No. 18-10248 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. Nos. 18 & 631** |

## ORDER, PURSUANT TO SECTIONS 105, 363, AND 365 OF THE BANKRUPTCY CODE, APPROVING SALE OF CERTAIN OF THE DEBTORS' ASSETS AND GRANTING RELATED RELIEF

Upon the *Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, and (III) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 18] (the "Motion");[2] and in connection with this Court's *Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures,*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Bon-Ton Stores, Inc. (5229); The Bon-Ton Department Stores, Inc. (9309); The Bon-Ton Giftco, LLC (2805); Carson Pirie Scott II, Inc. (2140); Bon-Ton Distribution, LLC (5855); McRIL, LLC (5548); Bonstores Holdings One, LLC (8574); Bonstores Realty One, LLC (8931); Bonstores Holdings Two, LLC (8775); and Bonstores Realty Two, LLC (9075). The headquarters for the above-captioned Debtors is 2801 East Market Street, Bldg. E, York, Pennsylvania 17402.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the Agency Agreement, as applicable.

*and the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 348] (the

"Bidding Procedures Order"); and it appearing that the relief herein is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; and it appearing that this Court

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that

consideration of the Motion and the relief requested therein is a core proceeding pursuant to

28 U.S.C. § 157; and adequate notice of the Motion having been given and it appearing that no

other notice need be given; and the Debtors and the Purchaser (as defined in the Agency

Agreement (as defined below)) having agreed that a contractual joint venture consisting of GA

Retail, Inc. and Tiger Capital Group, LLC (collectively, the "Agent") and the Indenture Trustee

(as defined below) (collectively, the "Purchaser") shall act as the Debtors' exclusive agent to

conduct sales (the "Sale") of the Assets[3] on the terms and conditions set forth in that certain

Agency Agreement, by and between the Purchaser and the Debtors, a substantially final form of

which is attached hereto as Exhibit A (the "Agency Agreement"); and the transaction represented

by the Agency Agreement having been determined to be the highest or otherwise best offer for

the Assets; and a sale hearing having been held on April 18, 2018 (the "Sale Hearing") to

consider the relief requested in the Motion with respect to the Assets and approval of the Agency

Agreement; and appearances of all interested parties having been noted on the record of the Sale

Hearing; and upon all of the proceedings had before this Court (including but not limited to the

testimony and other evidence proffered or adduced at the Sale Hearing); and this Court having

found and determined that the relief sought in the Motion with respect to the Assets is in the best

---

[3]   To the extent any Consignment Merchandise (as defined in the Final DIP Order) is to be sold by the Agent pursuant to the Agency Agreement, then, unless the applicable Consignor (as defined in the Final DIP Order (as defined below)) otherwise agrees, the terms of this Order and the Agency Agreement and the sale by the Agent of any such Consignment Merchandise shall be subject in all respects to the terms and conditions of paragraph 54 of the Final DIP Order.  Notwithstanding anything to the contrary contained herein, the sale or transfer of assets to the Purchaser pursuant to the Agency Agreement or otherwise shall not include the LXR Inventory.  For the avoidance of doubt, LXR shall retrieve the LXR Inventory at its sole cost and expense.

interests of the Debtors, their estates, their creditors, and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is hereby

### FOUND AND DETERMINED THAT:[4]

A.   **Jurisdiction:**  This Court has jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1134.  Approval of the Debtors entry into the

Agency Agreement, and the transactions contemplated thereby is a core proceeding under

28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.   **Venue:**  Venue of these cases in this district is proper pursuant to 28 U.S.C.

§ 1409(a).

C.   **Statutory Predicates:**  The statutory predicates for the approval of the

Agency Agreement and transactions contemplated therein are sections 105, 363, 364 and 554 of

the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004 and 9014.

D.   **Notice:**  Proper, timely, adequate and sufficient notice of the Motion and the

Sale Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the

Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and in compliance with the Bidding

Procedures Order.  The notice provided by the Debtors was good, sufficient and appropriate

under the circumstances, and no other or further notice of the Motion, the Sale Hearing or the

Agency Agreement is required.  The disclosures made by the Debtors concerning the Agency

Agreement and the Sale Hearing were sufficient, complete and adequate.

---

[4]      The findings of fact and the conclusions of law stated herein shall constitute this Court's findings of fact
and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to
Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so
deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

01:23123571.1

E.  **Opportunity to be Heard:**  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions contemplated by the Agency Agreement has been afforded to all interested persons and entities including, without limitation, the following:  (i) the Office of the United States Trustee, (ii) counsel to the DIP Administrative Agent, the DIP Tranche A-1 Documentation Agent, the Indenture Trustee under the Second Lien Indenture (as defined in the Final DIP Order) (the "Indenture Trustee"), and the ad hoc committee of Second Lien Noteholders, (iii) the Office of the United States Attorney for the District of Delaware, (iv) counsel to the Creditors' Committee, (v) all parties who are known by the Debtors to assert any lien, claim, interest or encumbrance in or upon any of the Assets, (vi) all lessors of leases for the Stores, (vii) all applicable federal, state, and local taxing authorities (collectively, the "Taxing Authorities"), (viii) all applicable state attorneys general and (ix) all entities on the general case service list as of the date of entry of the Bidding Procedures Order.  Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

F.  **Marketing Process:**  As demonstrated by  (i) the testimony and other evidence proffered or adduced at the hearing with respect to the approval of the Bidding Procedures held on March 12, 2018 (the "Bidding Procedures Hearing") and the Sale Hearing, and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, the Debtors and their advisors have thoroughly marketed the Assets and have conducted the bidding solicitation fairly, in accordance with the Bidding Procedures Order, and with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or who the Debtors believed may have an interest in acquiring or liquidating the Assets, to submit competing bids.  The Debtors, the Purchaser and the Agent have respectively

01:23123571.1

negotiated and undertaken their roles leading to the Sale and entry into the Agency Agreement in a diligent, noncollusive, fair and good faith manner.

G.     **Highest or Otherwise Best Offer:**  After the conclusion of the Auction held on April 16, 2018 and April 17, 2018, and in accordance with the Bidding Procedures, the Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures), determined in a valid and sound exercise of their business judgment that the highest and best Qualifying Bid (as defined in the Bidding Procedures) for the Assets was that of the Purchaser. The Agency Agreement, the substantially final form of which is attached hereto as Exhibit A, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement, (i) is the highest or otherwise best offer received by the Debtors for the Assets, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest and (iv) will provide a greater recovery for Debtors' creditors than would have been provided by any other available alternative.  There is no legal or equitable reason to delay entry into the Agency Agreement, and the transactions contemplated therein, including, without limitation, the Sale.

H.     **Business Judgment:**  The Debtors' decision to (i) enter into the Agency Agreement, and (ii) perform under and make payments required or permitted by the Agency Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.  Good and sufficient reasons for the approval of the Agency Agreement have been articulated by the Debtors.  The Debtors have demonstrated compelling circumstances for the consummation of the transactions contemplated under the Agency Agreement outside:  (i) the ordinary course of business, pursuant to section 363(b) of the

Bankruptcy Code and (ii) a plan of reorganization, in that, among other things, the immediate

consummation of the transactions contemplated under the Agency Agreement is necessary and

appropriate to preserve and maximize the value of the Debtors' estates.  To maximize the value

of the Assets, it is essential that the transactions contemplated under the Agency Agreement

occur promptly.

   I. **Personally Identifiable Information:**  The transactions contemplated by the

Agency Agreement do not include the sale or lease of personally identifiable information, as

defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or

assets containing personally identifiable information).

   J. **Credit Bid**.  A portion of the Purchase Price under Section 3 of the Agency

Agreement consists of the Credit Bid (as defined therein).  By agreement with the Creditors'

Committee (as defined below) and the Debtors, the Credit Bid:  (i) constitutes a valid, effective

and enforceable credit bid pursuant to Bankruptcy Code sections 363(b), 363(k) and 363(n),

other applicable law, the Prepetition Second Lien Documents (as defined in the Final DIP

Order[5]); (ii) is not subject to avoidance, equitable subordination, defense, offset (except for

offsets exercised prior to the Petition Date), counterclaim, or recharacterization by any party in

interest; (iii) is binding on the Debtors, the Debtors' estates, the Official Committee of Unsecured

Creditors appointed in these cases (the "Creditors' Committee"), any trustee or estate

representative, and all creditors and parties-in-interest and any of their respective predecessors,

successors or assigns; and (iv) is based on legal, valid, enforceable, perfected and nonavoidable

liens against certain of the Debtors' assets.

---

[5] "Final DIP Order" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 352].

01:23123571.1

K.    **Time of the Essence:**  Time is of the essence in effectuating the Agency

Agreement and proceeding with the Sale contemplated therein without interruption.  Based on

the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, and

in accordance with the Case Milestones (as defined in the Final DIP Order), the Sale under the

Agency Agreement must be commenced no later than April 19, 2018, to maximize the value that

the Purchaser may realize from the Sale, and the value that the Debtors may realize from

entering into the Agency Agreement.  Accordingly, cause exists to lift the stay to the extent

necessary, as contemplated by Bankruptcy Rules 4001(a) and 6004(h) and permit the immediate

effectiveness of this Order.

L.    **Sale Free and Clear:**  The Debtors, Purchaser and Agent (as applicable) may

sell the Assets free and clear of all liens, claims, and Encumbrances (as defined below) as

provided for herein because, in each case, one or more of the standards set forth in section

363(f)(1) through (5) of the Bankruptcy Code has been satisfied.  A  sale of the Assets other than

one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights

of setoff, except for setoff exercised prior to the Petition Date) and interests, including, without

limitation, security interests of whatever kind or nature, mortgages, conditional sale or other title

retention agreements, pledges, deeds of trust, hypothecations, assignments, preferences, debts,

easements, suits, licenses, options, rights-of-recovery, judgments, rights of first refusal, offset

(except for offsets exercised prior to the Petition Date), and/or recovery, claims for

reimbursement, contribution, indemnity, exoneration, products liability, alter-ego,

environmental, tax (including foreign, state and local taxes), labor, Employee Retirement Income

Security Act of 1974 ("ERISA"), Comprehensive Environmental Response, Compensation and

Liability Act 42 U.S.C. §§ 9601 et seq. ("CERCLA") and/or other liabilities, causes of action,

01:23123571.1

contract rights, orders and decrees of any court or foreign or domestic governmental entity, licenses, covenants, restrictions, indentures, loan agreements, instruments, collective bargaining agreements, leases, charges of any kind or nature, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities or liabilities under any collective bargaining agreement or labor practice agreement, of the Debtors or any of the Debtors' predecessors or affiliates, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), whether known or unknown, pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, statutory or non-statutory, liquidated or unliquidated, matured or unmatured, legal or equitable, material or non-material, disputed or undisputed, whether arising before, on or after the date on which these chapter 11 cases were commenced, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, but excluding any liens, claims, encumbrances or assumed liabilities permitted in the Agency Agreement, the "Encumbrances"), and without the protections of this Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and, thus, would materially and adversely impact the value that the Debtors' estates would be able to obtain for the sale of such Assets. But for the protections afforded to the Purchaser and the Agent under the Bankruptcy Code and

this Order, the Purchaser would not have offered to pay the consideration contemplated in the Agency Agreement.  In addition, subject to Paragraph 17 hereof, each entity with an Encumbrance upon the Assets (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Encumbrances, if any, attach to the payments owed by Purchaser to the Debtors under the Agency Agreement (but subject in all respects to the provisions of the Agency Agreement and this Order), in the same order of priority and with the same validity, force and effect that such Encumbrances had before the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as applicable; provided, however, that any liens granted or otherwise provided for under the Final DIP Order or the liens granted in connection with the Second Lien Indenture shall not attach to the Wind-Down Payment.  Therefore, approval of the Agency Agreement and the consummation of the Sale free and clear of Encumbrances (subject to the terms and conditions of the Agency Agreement and this Order) is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

M.    The recitation, in the immediately preceding paragraph of this Order, of specific agreements, plans or statutes is not intended, and shall not be construed, to limit the

generality of the categories of liabilities, debts, commitments or obligations referred to as "Encumbrances" therein.

N.    The Purchaser would not have entered into the Agency Agreement and would not have provided the Debtors with consideration thereunder, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the Debtors, Purchaser and Agent (as applicable) were not authorized to sell the Assets free and clear of all Encumbrances (subject to the terms of the Agency Agreement and this Order).  A sale of the Assets, other than one free and clear of all Encumbrances, would yield substantially less value for the Debtors' estates, with less certainty than the Sale.

O.    **Arms-length Sale:**  The consideration to be paid by the Purchaser under the Agency Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the rights to sell and dispose of the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transfers Act, and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The terms and conditions set forth in the Agency Agreement are fair and reasonable under the circumstances of these chapter 11 cases and were not entered into with the intent to nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.  None of the Debtors, the Purchaser or the Agent is entering into the Agency Agreement or proposing to consummate the Sale fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction.

P.   **Good Faith:**  The Debtors, the Purchaser, the Agent, their management and their respective boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals and representatives, actively participated in the bidding process and acted in good faith.  The Agency Agreement between the Purchaser and the Debtors was negotiated and entered into based upon arms' length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.  The Purchaser is entering into the Agency Agreement in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions applying or interpreting such provision, and is therefore entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code with respect to all aspects of the transactions contemplated by the Agency Agreement, including the Agent's acquisition of the rights to sell or cause to be sold or otherwise dispose of the Assets, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estate some or all of the Assets.  Neither the Debtors, the Purchaser nor the Agent has engaged in any conduct that would cause or permit the Sale, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code.  The Purchaser and the Agent have not violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, the Purchaser and the Agent have not acted in a collusive manner with any person and were not controlled by any agreement among bidders.  The Purchaser's and Agent's prospective performance and payment of amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

01:23123571.1

Q.   **Insider Status:**  Neither the Agent nor the Purchaser is an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between, on the one hand, the Agent and the Purchaser and, on the other hand, the Debtors.

R.   **Security Interests and Administrative Claims:**  The liens provided for in the Agency Agreement and this Order to secure the obligations of the Debtors under the Agency Agreement to the Purchaser are necessary to induce the Purchaser to agree to terms for the Agency Agreement that maximize value for the Debtors' estates.  The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of the Assets in partnership with a liquidation agent.  But for the protections afforded to the Purchaser under the Bankruptcy Code, this Order, and the Agency Agreement, the Purchaser would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement.  In addition, the DIP Administrative Agent, which holds a security interest in the property to which the Purchaser's security interest attaches, has consented to the security interests provided for in the Agency Agreement and on the terms set forth herein subject to the receipt by the DIP Administrative Agent of the portion of the Cash Purchase Price to be paid under a payoff letter acceptable to the DIP Administrative Agent and Tranche A-1 documentation agent (including general releases and discharge of claims as contemplated by paragraph 36 of the Final DIP Order) (the "Pay-off Letter"), in accordance with the terms of the Agency Agreement and this Order.

S.   **Section 506(c)**.  In light of the consideration provided by the Purchaser under the Agency Agreement, including the obligation to pay the Wind-Down Payment, the Second Lien Noteholders and Notes Trustee are entitled to a waiver of the provisions of section 506(c) of

the Bankruptcy Code as set forth herein, subject to the receipt by the DIP Administrative Agent of the Cash Purchase Price and the Payoff Letter (each as defined in the Agency Agreement) in accordance with the terms of the Agency Agreement and this Order.

T.    **Corporate Authority:**  The Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the Agency Agreement and all other transactions contemplated thereby (including without limitation, reaching an agreement and resolution regarding the Final Reconciliation contemplated by the Agency Agreement), and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) have taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

U.    The consummation of the Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 363(n) and 364 of the Bankruptcy Code.

V.    **No Successor Liability:**  No sale, transfer or other disposition of the Assets pursuant to the Agency Agreement (including the GOB Sale) or entry into the Agency Agreement will subject the Purchaser or the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Assets by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories.  By virtue of the consummation of the Sale contemplated by the

01:23123571.1

Agency Agreement, (i) neither the Purchaser nor the Agent is a continuation of the Debtors and their respective estates, there is no continuity or continuity of enterprise between, on the one hand, the Purchaser and/or the Agent and, on the other hand, the Debtors, and there is no common identity between, on the one hand, the Purchaser and/or the Agent and, on the other hand, the Debtors; (ii) neither the Purchaser nor the Agent is holding itself out to the public as a continuation of the Debtors or their respective estates; and (iii) the Sale does not amount to a consolidation, merger or de facto merger of, on the one hand, the Purchaser and/or the Agent and, on the other hand, the Debtors and/or the Debtors' estates.  Accordingly, neither the Purchaser nor the Agent is or shall be deemed a successor to the Debtors or their respective estates as a result of the consummation of the Sale contemplated by the Agency Agreement.

W.    **No *Sub Rosa* Plan:**  Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtors' creditors, nor impermissibly dictates the terms of a chapter 11 plan of reorganization for the Debtors.  Entry into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

X.    **Third Party Rights**:  Nothing in the Agency Agreement creates any third party beneficiary rights in any entity not a party to the Agency Agreement.

Y.    **Sale Guidelines**:  The sale guidelines (the "Sale Guidelines") attached hereto as Exhibit B, are reasonable and will maximize the returns on the Assets for the benefit of the Debtors' estates and creditors.

01:23123571.1

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.      **Motion Granted, Objections Overruled**

1.      The relief requested in the Motion as it relates to Assets is granted as set forth herein.  Any remaining objections to the Motion or the relief requested therein, in either case, as they relate to the Assets, that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits with prejudice in all respects and denied.  All parties and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

2.      This Court's findings of fact and conclusions of law in the Bidding Procedures Order and the record of the Bidding Procedures Hearing are incorporated herein by reference.

B.      **Agency Agreement Approved and Authorized**

3.      The Agency Agreement is approved pursuant to sections 105, 363, 364 and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 60004 and 9014.  The Debtors are hereby authorized and empowered to enter into and perform under the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein (including, without limitation, conducting the Sale and reaching an agreement and resolution regarding the Final Reconciliation contemplated by the Agency Agreement, which agreement and resolution shall be binding on all parties (including, without limitation, the Debtors, the Creditors' Committee, the DIP Administrative Agent, the DIP Tranche A-1 Documentation Agent, the Indenture Trustee, any successor chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of this Court)) is hereby approved in its entirety and is

incorporated herein by reference. Following Closing, the Agent (a) shall be deemed to be the

Debtors' exclusive agent for the limited purpose of conducting the Sale and (b) subject to

payment of the Cash Purchase Price and Purchaser's compliance with its other obligations under

the Agency Agreement, including its payment obligations thereunder, shall have the exclusive

right to market and sell, and/or otherwise designate the purchasers, licensees, and/or assignees

of, any or all of the Assets free and clear of all liens, claims, and Encumbrances thereon. The

failure to include specifically any particular provision of the Agency Agreement in this Order

shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court

that the Agency Agreement and all of its provisions, payments and transactions, be authorized

and approved in their entirety. Likewise, all of the provisions of this Order are nonseverable and

mutually dependent.

4.       All amounts payable to the Purchaser and/or the Agent under the Agency

Agreement shall be payable to the Purchaser and/or the Agent without the need for any

application of the Purchaser and/or the Agent therefor or any further order of this Court. At the

Closing, the Purchaser is authorized and empowered to pay, without offset or adjustment, the

Cash Purchase Price in accordance with the terms of the Agency Agreement and the Payoff

Letter. The DIP Administrative Agent is authorized to apply the Cash Purchase Price in

accordance with the Agency Agreement and the Final DIP Order without the need for any

application of the DIP Administrative Agent or any further order of this Court. Professionals for

the DIP Administrative Agent and the DIP Tranche A-1 Documentation Agent are authorized to

immediately receive and apply any amounts received pursuant to the Payoff Letter without the

need to comply with the provisions of paragraph 35 of the Final DIP Order. Any and all

amounts paid to professionals for the DIP Administrative Agent and the DIP Tranche A-1

01:23123571.1

Documentation Agent pursuant to the Payoff Letter are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

5.      Subject to the provisions of this Order, the Debtors, the Purchaser and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale in accordance with the Agency Agreement and Sale Guidelines, which Sale Guidelines are hereby approved in their entirety.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Purchaser and the Agent and each of their respective officers, employees and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the Sale in accordance with the Agency Agreement and effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.  Without limiting the foregoing, the Agent is specifically authorized to (a) exercise the Asset Designation Rights and the Lease/Contract Designation Rights and (b) subject to Agent's compliance with its payment obligations under the Agency Agreement and this Order, execute, in the name of and as agent for the Debtors, any and all deeds, bills of sale, and other instruments or documents necessary to effectuate the Sale or other transfer or conveyance of any of the Assets.  Any officer of the Debtor is authorized to act on behalf of the Debtors in connection with the Sale and no other consents or approvals are necessary or required for the Debtors to carry out the Sale, effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

01:23123571.1

7.     Any payment obligation of Purchaser and Agent under the Agency Agreement is binding upon both the Agent and Purchaser and they shall be jointly and severally responsible therefor.

### C.     Order Binding

8.     This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

9.     This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Purchaser, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest or Encumbrance in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall

01:23123571.1

continue in these or any superseding cases and shall be binding upon the Debtors, the Purchaser,

the Agent and their respective successors and permitted assigns, including any trustee or other

fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter

11 of the Bankruptcy Code, and subject to Purchaser's obligation to pay Expenses and fund the

Wind-Down Payment, any such successor shall continue to hold all Assets and Proceeds strictly

in trust for the benefit of Purchaser.  Any trustee appointed in these cases shall be and hereby is

authorized to operate the business of the Debtors to the fullest extent necessary to permit

compliance with the terms of this Order and the Agency Agreement, and the Purchaser, the

Agent and such trustee shall be and hereby are authorized to perform under the Agency

Agreement upon the appointment of the trustee without the need for further order of this Court.

       **D.**       **Good Faith.**

       10.       Neither the Debtors, the Purchaser nor the Agent has engaged in any

action or inaction that would cause or permit the Sale to be avoided or costs or damages to be

imposed under section 363(n) of the Bankruptcy Code.  Entry into the Agency Agreement is

undertaken by the parties thereto without collusion and in good faith, as that term is used in

sections 363(m) and 364(e) of the Bankruptcy Code, and the Purchaser and the Agent shall be

protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is

reversed or modified on appeal.  The reversal or modification on appeal of the authorization

provided herein to enter into the Agency Agreement and consummate the transactions

contemplated thereby shall not affect the validity of such transactions, unless such authorization

is duly stayed pending such appeal.  The Purchaser and the Agent are entitled to all of the

benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code.  The

transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to

section 363(n) or chapter 5 of the Bankruptcy Code and the Purchaser and the Agent are entitled

to all of the protections and immunities thereunder.

     **E.**     **Conduct of the Sale**

     11.     Except as otherwise provided in the Agency Agreement and subject to any

provision herein to the contary, including pursuant to sections 105(a) and 363(f) of the

Bankruptcy Code, the Debtors, Purchaser and Agent (as applicable) shall be authorized to sell or

cause to be sold or otherwise dispose of all Merchandise, the Owned FF&E and other Assets to

be sold pursuant to the Agency Agreement free and clear of any and all Encumbrances (subject

to receipt by the DIP Administrative Agent of the Cash Purchase Price and the Payoff Letter),

subject in all respects to the Agency Agreement and this Order.  For the sake of clarity, however,

nothing in this paragraph is intended to diminish the liens in favor of the Purchaser and/or Agent,

as reflected in the Agency Agreement and this Order, that attach to, among other things, the

Proceeds of the Sale.

     12.     The consent of the DIP Administrative Agent, the DIP Tranche A-1

Documentation Agent, the DIP Lenders, and the Prepetition ABL Parties to the Sale on the terms

set forth herein and in the Agency Agreement is subject to the receipt by the DIP Administrative

Agent of the Cash Purchase Price and the Payoff Letter.

     13.     If any person or entity that has filed financing statements, mortgages,

construction or mechanic's liens, lis pendens or other documents or agreements evidencing

Encumbrances against or liens on or interests in the Assets shall not have delivered to the

Debtors, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, or releases of any Encumbrances which the person or

entity has with respect to the Assets:  (a) each such person or entity is hereby directed to deliver

all such statements, instruments and releases; (b) the Debtors, the Purchaser and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity asserting the same; and (c) the Purchaser and the Agent are hereby authorized to file a copy of this Order, which, upon filing, shall be conclusive evidence of the release and termination of such Encumbrances.  Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related transactions contemplated by the Agency Agreement and this Order.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

14.     All entities that are presently in possession of some or all of the Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent.

15.     The Debtors, the Purchaser and the Agent shall not extend the Sale Termination Date beyond August 31, 2018, unless extended by mutual written agreement of the Debtors, the Purchaser and the Agent.  The Agent may, in its discretion, earlier terminate the GOB Sale on a Store-by-Store basis upon not less than seven (7) days' prior written notice to the Debtors (and the affected landlords), subject to the terms and conditions of the Agency Agreement.

16.     Unless otherwise ordered by this Court, all newspapers and other advertising media in which the Sale may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors, the Purchaser and the Agent to

consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sale in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the Sale in accordance with the Agency Agreement, the Sale Guidelines, and this Order.

    17. Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or the Agency Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.  Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Purchaser or the Agent is an operator with respect to any environmental law or regulation. Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, all applicable federal, state, and local laws, regulations and ordinances, including, without limitation, all laws and regulations relating to advertising, privacy, consumer protection, occupational health and safety and the environment, together with all applicable statutes, rules,

regulations and orders of, and applicable restrictions imposed by, governmental authorities (collectively, the "Applicable General Laws").  Nothing in this Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing Applicable General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact Applicable General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

18.    To the extent that the Sale is subject to any applicable laws, rules and regulations in respect of "going out of business", "store closing" or similar-themed sales and permitting, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to Sale (each a "Liquidation Sale Law" and, together, the "Liquidation Sale Laws"), the following provisions shall apply:

a.    Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Sale Laws and, subject to the limitations set forth herein, are authorized to conduct the Sale in accordance with the

terms of this Order and the Sale Guidelines without the necessity of further showing compliance with any Liquidation Sale Laws.

b.  Within three (3) days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile, and/or regular U.S. mail, on:  (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, (iii) the division of consumer protection for each state where the Sale will be held; and (iv) the chief legal counsel for each local jurisdiction where the Sale will be held.

c.  To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Purchaser and the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter.  If the Debtors, the Purchaser, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.  In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Purchaser, the Agent or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors', the Purchaser's or the Agent's conduct pursuant to this Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent further order of this Court.  This Court grants authority for the Debtors and the Agent to conduct the Sale pursuant to the terms of this Order, the Agency Agreement, and/or the Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

     e.        If, at any time, a dispute arises between the Debtors, the Purchaser and/or the Agent and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Order related to Liquidation Sale Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made de novo.

19.       Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

20.       Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Agency Agreement or the Sale Guidelines, including, but not limited to, advertising the Sale as a "going out of business," "total liquidation," "store-closing" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

01:23123571.1

21.     Except as expressly provided in this Order, the Agency Agreement, and any Side Letter (as defined below), the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision in any lease, sublease, license or other agreement relative to occupancy, abandonment of assets or "going dark" provisions or other provisions that purport to prohibit, restrict or otherwise interfere with the conduct of the Sale.  The Agent and landlords of the Stores and the Distribution Centers are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of this Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraphs 18 through 20 herein.  In the event of any conflict between the Sale Guidelines and any Side Letter, or between this Order and any Side Letter, the terms of such Side Letter shall control.

22.     Except as expressly provided for herein or in the Sale Guidelines (as such Sale Guidelines may be modified by a Side Letter with an applicable landlord), and except with respect to any Governmental Unit (as to which Paragraphs 18 through 20 herein shall apply), no person or entity, including but not limited to any landlord, licensor or creditor shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Purchaser, the Agent, or the landlords at the Debtors' closing Stores that might in

any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct

of the Sale or other liquidation sales at the Stores and/or seek to recover damages for breach(es)

of covenants or provisions in any lease, sublease or license based upon any relief authorized

herein.

23.     The Agent shall have the exclusive right to use the Stores and all related

store services, furniture, fixtures, equipment and other assets of the Debtors, as set forth in the

Agency Agreement, for the purpose of conducting the Sale, free of any interference from any

entity or person, subject to compliance with the Sale Guidelines (as such Sale Guidelines may be

modified by a Side Letter with an applicable landlord) and this Order and subject to Paragraphs

18 through 20 of this Order.

24.     Except as otherwise provided in this Order or in the Sale Guidelines (as

such Sale Guidelines may be modified by a Side Letter), nothing in the Agency Agreement shall

in any way alter or affect any rights of landlords to enforce the provisions of their leases against

the Debtors as the tenant, or diminish the obligations of the Debtors to comply with the terms of

the leases or section 365(d)(3) of the Bankruptcy Code, including, but not limited to, any

landlord's right to seek to enforce the Debtors' obligations under the leases in accordance with

the terms of the leases; *provided* that the conduct of the Sale in accordance with the Sale

Guidelines shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

25.     In connection with a motion by the Debtors to reject any lease, which will

be served on notice to the affected parties (including any party with an ownership interest in the

property to be abandoned), pursuant to section 554(a) of the Bankruptcy Code, the Debtors, the

Purchaser and the Agent are permitted to abandon property of the Debtors' estates in accordance

with the terms and provisions of the Agency Agreement, without incurring liability to any person

or entity; *provided*, *however*, unless the Agent otherwise consents, the Debtors may only abandon property located in any Store (and, if applicable, a Distribution Center) on or after the applicable Sale Termination Date.  In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtors or any other party in interest to object thereto.

26.     Before any sale, abandonment or other disposition of the Debtors' computers (including software) and/or cash registers and any other point of sale FF&E located at the Stores (collectively, "POS Equipment") that may contain customer lists, identifiable personal and/or confidential information about the Debtors' employees and/or customers, or credit card numbers, ("Confidential Information") takes effect, the Debtors shall use commercially reasonable efforts to remove or cause to be removed the Confidential Information from the POS Equipment.

27.     Agent shall accept the Debtors' gift certificates, gift cards, store credits, return credits, or similar merchandise credits issued by the Debtors (collectively, "Gift Certificates") for a period of ten days from and including the Sale Commencement Date; *provided*, *however*, the Agent shall not be required to accept any mall and/or landlord-issued gift cards, gift certificates, merchandise credits or other similar items unless satisfactory arrangements are made between and among the Agent, the Debtors, and the issuer of such items for reimbursement to the Agent and the Debtors for all such amounts honored during the Sale Term.  Thereafter, Agent shall have no obligation to accept Gift Certificates.  The Agent shall not sell any certificates or gift cards and the Agent shall not accept coupons or honor any other

employee or other discounts.  Agent's acceptance of returns shall not impact the Wind-Down Budget or the Wind-Down Cap.

28.    The Agent shall accept returns of goods sold by the Debtors prior to the Closing for a period of ten days from and including the Sale Commencement Date, *provided* that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered by the Agent.  Thereafter, Agent shall have no obligation to accept returns of goods sold by the Debtors prior to the Closing.

29.    All sales of Merchandise pursuant to the Agency Agreement will be "final sales" and "as is," and appropriate signage and sales receipts will reflect the same.  All sales by Agent pursuant to the Agency Agreement will be made only for cash or nationally recognized bank credit cards.  Notwithstanding the foregoing, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Debtors and/or the Agent shall accept return of any goods purchased during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, *provided* that (i) the consumer must return the affected good(s) within twenty-one (21) days of their purchase, (ii) the consumer must provide a receipt, and (iii) the asserted defect must in fact be a "latent" defect.  Subject to the terms of the Agency Agreement, the Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.  Agent's acceptance of Gift Certificates shall not impact the Wind-Down Budget or the Wind-Down Cap.

30.     During the Sale Term, the Agent shall be granted a limited license and right to use all Intellectual Property for purposes of conducting the Sale; *provided*, *however*, that the Agent shall comply with reasonable restrictions requested by the Debtors in order for the Debtors to comply with its privacy policy and applicable laws governing the use and dissemination of confidential consumer personal data.  Notwithstanding anything herein to the contrary, the disposition of any Intellectual Property that would result in the sale or lease of personally identifiable information (as such term is defined in section 101(41A) of the Bankruptcy Code) shall be subject to a determination made by a consumer privacy ombudsman appointed in these chapter 11 cases.

31.     The Agent shall be permitted to include in the Sale Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement.  Any transactions relating to the Additional Agent Merchandise are, and shall be construed as, a true consignment from Agent to Debtors.  Debtors acknowledge that the Additional Agent Merchandise shall be consigned to Debtors as a true consignment under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC").  Subject to the terms set forth in the Agency Agreement, Agent is hereby granted a first priority security interest (the "Agent Lien") in (i) the Additional Agent Merchandise and (ii) the proceeds realized upon the sale or disposition of the Additional Agent Merchandise in the Sale, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (*provided* that Agent is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtors as the consignee

therefor, and Agent's security interest in such Additional Agent Merchandise and Additional

Agent Merchandise proceeds).

32.     Except as expressly provided for in the Agency Agreement, nothing in this

Order or the Agency Agreement, and none of the Purchaser's or Agent's actions taken in respect

of the Sale shall be deemed to constitute an assumption by Purchaser or Agent of any of the

Debtors' obligations relating to any of the Debtors' employees.  Moreover, neither the Purchaser

nor the Agent shall become liable under any collective bargaining or employment agreement or

be deemed a joint or successor employer with respect to such employees.  Neither Purchaser,

Agent nor any entity comprising Purchaser or Agent is or shall be a mere continuation of the

Debtors or otherwise subject to successor liability in connection with any of the Assets.

33.     During the Sale Term, all sales, excise, gross receipts and other taxes

attributable to sales of Merchandise and Additional Agent Merchandise, as indicated on the

Debtors' point of sale equipment (other than taxes on income) payable to any taxing authority

having jurisdiction (collectively, "Sales Taxes") shall be added to the sales price of Merchandise

and Additional Agent Merchandise and collected by Agent, on Debtors' behalf, at the time of

sale.  Such Sales Taxes shall be paid to the Taxing Authorities as set forth in the Agency

Agreement.  All Sales Taxes shall be deposited into a segregated account designated by Debtors

and Agent solely for the deposit of such Sales Taxes.  The Debtors and/or Agent, as applicable,

are directed to remit all Sales Taxes arising from the Sale to the applicable taxing authorities as

and when due, *provided* that in the case of a bona fide dispute the Debtors and/or the Agent are

only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the

dispute is decided in favor of the taxing authority.  For the avoidance of doubt, Sales Taxes

collected and held in trust by the Debtors and/or the Agent shall not be used to pay any creditor

or any other party, other than the taxing authority for which the Sales Taxes are collected.  The

Agent shall collect, remit to the Debtors and account for Sales Taxes as and to the extent

provided in the Agency Agreement.  This Order does not enjoin, suspend or restrain the

assessment, levy or collection of any tax under State law, and does not constitute a declaratory

judgment with respect to any party's liability for taxes under State law.

34.    Subject to the terms set forth in the Agency Agreement, the Debtors

and/or the Agent (as the case may be) are authorized and empowered to transfer Assets among

the Stores and the Distribution Centers.  The Agent is authorized to sell or cause to be sold or

otherwise dispose of the Debtors' FF&E and abandon the same, in each case, as provided for and

in accordance with the terms of the Agency Agreement.

**F.    Liens and Superpriority Claims Granted To Agent**

35.    Upon the payment of the Cash Purchase Price, and solely to the extent that

any Assets or Proceeds are, notwithstanding the provisions of this Order, subsequently

determined to constitute property of the Debtors' estates, but subject to Purchaser's obligation to

pay Expenses and fund the Wind-Down Payment (which shall not be subject to any liens or

claims in favor of the Purchaser or any other party), Purchaser shall have, pursuant to section

364(d) of the Bankruptcy Code, a senior lien on such Assets and all Proceeds.  In addition,

Purchaser shall have, subject to Purchaser's obligations under the Agency Agreement to fund the

Wind-Down Payment (which shall not be subject to such liens or claims in favor of the

Purchaser or any other party) and Expenses, a first priority senior security interest in each

Designated Deposit Account and all funds on deposit in such accounts from and after the

Closing.  The liens granted pursuant to this paragraph shall be automatically perfected pursuant

01:23123571.1

to this Order and the Purchaser is expressly authorized to take any action Purchaser deems appropriate to perfect and enforce such liens.

36.     Upon the payment of the Cash Purchase Price and subject to Purchaser's obligation to Pay Expenses and fund the Wind-Down Payment, until all Assets have been sold or otherwise disposed of, and solely to the extent that any Assets or Proceeds are, notwithstanding the provisions of this Order, subsequently determined to constitute property of the Debtors' estates, Purchaser shall have a superpriority administrative expense claim against the Debtors to the extent of any amounts owing from the Debtors to Purchaser in connection with the Agency Agreement but subject in all respects to the terms of the Agency Agreement and this Order.

### G.    Designation Rights

37.     **Lease/Contract Designation Rights**.  Procedures with respect to the Lease/Contract Designation Rights shall be the subject to a further order of this Court, upon submission of a motion seeking approval of such procedures.

38.     The Debtors shall have no responsibility for any cure amounts with respect to any Lease or Contract assumption and assignment; *provided*, *however*, any cure amounts with respect to any Lease or Contract shall be paid by the assignee or another party other than the Debtors.

39.     Notwithstanding anything in this Order or the Agency Agreement, all landlord rights under the Leases and section 365 of the Bankruptcy Code are preserved.

40.     In addition to the Lease/Contract Designation Rights, Purchaser shall have the right, upon written notice to the Debtors and as reflected in notices filed in the Bankruptcy Cases from time to time, to direct the Debtors to reject any Lease or Contract as specified by Purchaser.

01:23123571.1

41.     **Asset Designation Rights; Asset Designation Notice**.  The Asset

Designation Rights, as set forth in the Agency Agreement, are approved in their entirety.  The

Asset Designation Notice, substantially in the form attached to the Agency Agreement as

Exhibit 2(b)(iv), is approved in its entirety.  The sale, license, transfer, or other conveyance of

any Assets (other than the Assets being sold pursuant to the GOB Sale, as to which no further

notice shall be required) reflected in the Asset Designation Notices to filed in the Bankruptcy

Cases from time to time by the Agent, shall be automatically effective on the date reflected in the

applicable Asset Designation Notice and subject to the satisfaction of any closing conditions

reflected therein, and the sale or other conveyance of such Assets shall be free and clear of all

liens, claims, and encumbrances to the extent permitted by the Bankruptcy Code without further

order of this Court, *provided*, *however*, that nothing in this Sale Order shall inhibit the ability of

Agent to seek other or further orders of the Court in connection with the sale or other disposition

of any Assets.

42.     **Designation Rights Termination Date**.  Subject to section 3.1(c) of the

Agency Agreement, and the deadlines under section 365(d)(4) with respect to unexpired leases

and nonresidential real property, to the extent Purchaser has not designated the purchaser or

other assignee of any Assets (the "Residual Assets") as of December 31, 2018 (as may be

extended by written agreement of the Parties, the "Designation Rights Termination Date"),

subject to the payment of all Expenses, the Cash Purchase Price and payment of the Wind-Down

Payment (1) ownership of all cash (other than the Wind-Down Payment) (on hand, in the bank,

in transit, or otherwise), credit card processing float, accounts receivable, notes receivable, credit

card receivables, other receivables, deposits, security deposits, proceeds of retail sales in all of

the Debtors' retail store locations, rights to refunds, other rights to payment, and Intellectual

Property comprising Residual Assets shall vest in Purchaser or its nominee and (2) ownership of all other Residual Assets shall revert to the Debtors' estates, each on the Designation Rights Termination Date.

### H.    Certain Assumed Obligations

43.    On the Closing, and consistent with the Wind-Down Budget, the Agent shall assume the obligation to pay (a) 503(b)(9) Claims up to a maximum aggregate amount of $2,000,000 (the "503(b)(9) Cap"), and (b) Stub Rent Claims up to a maximum aggregate amount of $8,000,000 (the "Stub Rent Cap"), which amount shall not be reduced in the event Stub Rent Claims total less than the Stub Rent Cap.  An amount equal to the sum of the 503(b)(9) Cap and the Stub Rent Cap shall be placed into a segregated account to be held in trust for the benefit of holders of 503(b)(9) Claims and Stub Rent Claims.  To the extent the sum of all allowed Stub Rent Claims or 503(b)(9) Claims, exceeds the applicable Stub Rent Cap or the 503(b)(9) Cap, such claims shall be paid pro rata up to the Stub Rent Cap or the 503(b)(9) Cap, as applicable, or as otherwise agreed to with the Creditors' Committee and subject to further Court approval, if required.  All payments on account of Stub Rent Claims and 503(b)(9) Claims shall be paid directly to the applicable claimants.  All payments made pursuant to this paragraph, subject to the Stub Rent Cap and the 503(b)(9) Cap, shall be credited against the Wind-Down Payment.

44.    At the Agent's expense, within 10 days after the entry of this Order, the Debtors shall file a notice ("Creditor Notice") and serve such notice on all known trade creditors and landlords identifying the 503(b)(9) Claim and Stub Rent Claim for each trade creditor and landlord, as applicable.  The Debtors shall give each trade creditor and landlord no less than twenty (20) days to file a response.  If no response is filed, the amount set forth on the Creditor Notice shall be deemed allowed and the applicable creditor shall be barred from objecting.  If a

01:23123571.1

response is filed, the claimant and the Debtors, but at Agent's expense, within ten (10) days shall use good faith and best efforts to resolve any dispute amicably, but if they are unable to do so, then the Court shall resolve the dispute at the next Omnibus Hearing.  Within (60) days of the entry of this Order, at the Agent's expense, the Debtors shall provide the Agent with an amended Creditor Notice setting forth all of the allowed 503(b)(9) Claims and allowed Stub Rent Claims.  The Agent shall have no obligation to investigate, assess, object to, or contest the merits of any 503(b)(9) Claims or Stub Rent Claims and is entitled to rely on the amounts included on the amended Creditor Notice.  Payment of Stub Rent Claims shall be made by the earlier of (x) thirty (30) days after the completion of the reconciliation of such claims and (y) the conclusion of the Designation Rights Period.

45.     All rights of Bartlett-Tharani J.V. under the Motion for Relief from the Automatic Stay, Adequate Protection and Other Relief [D.I. 390], the subject Trademark Design Services & License Agreement, and Federal trademark law, including as to any related goods, are reserved.

**I.     Other Provisions**

46.     **Certain Assets Held in Trust**.  Following the occurrence of the Closing, subject to Purchaser's obligation to pay Expenses and fund the Wind-Down Payment, the Debtors and any trustee appointed in these chapter 11 cases or any successor cases thereto shall hold the Assets (other than the Assets being sold through the GOB Sale and the Wind-Down / Expense Advance) strictly in trust for the benefit of Purchaser and, as such, the Assets shall not constitute property of Debtors' bankruptcy estates pursuant to and consistent with 11 U.S.C. §541(b)(1) at any time following the Closing.

01:23123571.1

47.     **Release of Funds by Wilmington Trust**.  At the Closing, all funds held in escrow by Wilmington Trust, National Association ("WT") pursuant to that certain Escrow Agreement dated as of March 5, 2018, by and among the members of Agent, the Second Lien Noteholders, and WT shall be released at the Closing for application to the Cash Purchase Price.

48.     **The Cash Purchase Price**.  Upon receipt by the DIP Administrative Agent (as defined in the Final DIP Order) and certain other persons as directed in the Payoff Letter of the Cash Purchase Price pursuant to Section 3.1(a) of the Agency Agreement, all ongoing commitments under the DIP Credit Agreement (as defined in the Final DIP Order) shall be canceled and terminated.

49.     **Wind-Down Payment; Wind-Down Budget**.  The Debtors shall use amounts comprising the Wind-Down Payment strictly in accordance with the Wind-Down Budget, attached to the Agency Agreement as Exhibit 3.1(c), except that the Wind-Down/Expense Advance shall also be used for payment of any and all fees due to the Clerk of Court, and statutory fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(A)(6), with no such fees being subject to any budget or the consent of the Purchaser.  Purchaser shall neither have nor incur any obligation to advance or fund any amounts to or for the Debtors except as set forth in the Agency Agreement and the Wind-Down Budget.  Any amendment to or other modification of the Wind-Down Budget shall only be effective upon approval by Purchaser in its sole discretion.  The Debtors are directed to provide weekly reporting to Agent of all amounts expended for Expenses and pursuant to the Wind-Down Budget.  The Debtors shall make their books and records available to Purchaser at all times.

50.     **Wind-Down / Expense Advance**.  Subject to paragraphs 43 and 44 of this Order and the terms of the Agency Agreement, the Wind-Down / Expense Advance and the

Wind-Down Payments shall be deemed held in escrow for the exclusive purpose of paying (1) Expenses and (2) administrative expenses and other amounts pursuant to and solely as reflected in the Wind-Down Budget (provided that such payments may be made from the Wind-Down / Expense Advance as and when due without further order of the Court or action by any Party), and shall not be used for any other purpose without the express written consent of Purchaser in its sole discretion.  As set forth in the Agency Agreement, any payment by the Debtors of expenses reflected in the Wind-Down Budget from the Wind-Down / Expense Advance shall be credited against the Wind-Down Payment.  The Wind-Down / Expense Advance shall not be used for payment of any amounts other than as set forth in [Section 3.1(d)] of the Agency Agreement.

51.     **Remaining Merchandise**.  To the extent that there is Merchandise remaining at the Sale Termination Date (the "Remaining Merchandise"), such Remaining Merchandise shall be deemed automatically transferred to Agent free and clear of all liens, claims, and encumbrances.  Agent and its affiliates shall be authorized to sell or cause to be sold or otherwise dispose of the Remaining Merchandise with all logos, brand names, and other Intellectual Property intact, and shall be authorized to advertise the sale of the Remaining Merchandise using the Intellectual Property.

52.     **Proceeds of Sale Pursuant to Agency Agreement**.  Following the payment of the Cash Purchase Price but subject to Purchaser's obligation to pay Expenses and fund the Wind-Down Payment in accordance with the Wind-Down Budget, except as otherwise set forth in the Agency Agreement or in paragraph 52 of this Order, all Proceeds, including but not limited to all Proceeds arising from the sale, lease, licensing, assignment, or other disposition of any of the Assets, shall be the sole property of Purchaser, and Purchaser shall be entitled to

01:23123571.1

retain all Proceeds for its own account, subject to further distribution among the entities

comprising Purchaser pursuant to any agreements between the entities comprising Purchaser and

the Second Lien Noteholders.  Following the payment of the Cash Purchase Price, but subject to

Purchaser's obligation to pay Expenses and fund the Wind-Down Payment, any Proceeds

received by, or otherwise in the possession of, the Debtors at any time shall be segregated and

held strictly in trust for the benefit of Purchaser, shall not be commingled with the Debtors' own

assets, and, as such, shall not become property of the Debtors' bankruptcy estates pursuant to and

consistent with 11 U.S.C. §541(b)(1), and shall be paid over to Purchaser immediately.  If at any

time, the Debtors hold any amounts due to Purchaser under the Agency Agreement, the Debtors

may, in their discretion, offset such amounts being held by the Debtors against any undisputed

amounts due and owing by, or required to be paid by, Purchaser hereunder.

   53. **Initial Store Closing Order Is Binding.**  Notwithstanding anything to the

contrary herein, the *Final Order (A) Authorizing the Debtors to Assume Store Closing*

*Agreement; (B) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims*

*and Encumbrances; (C) Approving Dispute Resolution Procedures; (D) Authorizing Customary*

*Bonuses to Employees of Closing Stores and (E) Approving the Debtors' Store Closing Plan*

[Docket No. 318] (including the Store Closing Agreement (as defined therein) attached thereto,

the "Initial Store Closing Order") shall continue to apply to all stores being closed thereunder

(the "Initial Closing Stores"), and, except as set forth herein, any side letters executed pursuant to

such order shall continue to govern the sales as such Initial Closing Stores.  The Debtors shall

pay all fees, costs, and expenses ("Amounts Due") that are payable to or that become payable

to  the contractual joint venture composed of Hilco Merchant Services, LLC and Gordon

Brothers Retail Partners, LLC (the "JV Agent") under and in accordance with the Initial Store

Closing Order and the Store Closing Agreement, and no liens or superpriority claims arising under this Order shall be senior to any liens or claims granted to the JV Agent pursuant to the Initial Store Closing Order,until the JV Agent is indefeasibly paid all Amounts Due. The term "Assets" as used in this Sale Order shall not include any "Additional Agent Goods" (as defined in the Store Closing Agreement) or proceeds of Additional Agent Goods, and such Additional Agent Goods and proceeds of Additional Agent Goods shall continue to be the exclusive property of and subject to the exclusive control of the JV Agent.  The JV Agent's first priority security interests in and liens upon the Additional Agent Goods and the proceeds of the Additional Agent Goods, each as set forth in the Store Closing Agreement and Initial Store Closing Order, shall be unaffected by this Sale Order, and the Debtors shall continue to turnover to the JV Agent the proceeds of the Additional Agent Goods in accordance with the Initial Store Closing Order and the Store Closing Agreement.

### G.    Purchaser Releases

54.    Each of GA, Tiger, the Notes Trustee (on its own behalf and on behalf of the other Prepetition Second Lien Noteholders (as defined in the Final DIP Order)) stipulates and agrees that (a) it has no defense, counterclaim, offset, cross-complaint, claim or demand of  any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the obligation of the Purchaser to pay the Cash Purchase Price to the DIP Administrative Agent, (b) on its own behalf, and on behalf of its employees, agents, officers, directors, successors, assigns, and estate, it does hereby fully, unconditionally, and irrevocably forever relieve, relinquish, release, waive, discharge, and hold harmless the DIP Administrative Agent, the DIP Tranche A-1 Documentation Agent, each Issuing Bank (as defined in the DIP Credit Agreement), each DIP Lender and each Prepetition ABL Party (as defined in the Final DIP Order), all of the affiliates of

01:23123571.1

the foregoing and all of their current and former shareholders, directors, officers, employees, agents, attorneys, representatives, successors, assigns (collectively, the "Released Parties") of and from any and all claims, debts, actions, causes of action, liabilities, demands, obligations, promises, acts, agreements, costs, expenses (including attorneys' fees) and damages of whatsoever kind and nature, whether now known or unknown, based upon, resulting from, arising out of, or in connection with (i) the DIP Credit Agreement and the DIP Administrative Agent, the DIP Tranche A-1 Documentation Agent, and each DIP Lender's administration of the DIP Loans or other credit extensions or financial accommodations made by the DIP Lenders, the Issuing Banks or any of their Affiliates (as defined in the DIP Credit Agreement) from time to time to or for the account of the Debtors pursuant to the DIP Documents and the documents governing or evidencing any Bank Product Debt (as defined in the DIP Credit Agreement), including, without limitation, any DIP Loans made or continued under the DIP Credit Agreement, or in any way connected with or relating to any other instrument or document executed or delivered in connection therewith and/or the administration or collection thereof and/or collateral therefor or guaranties thereof; and (ii) the Prepetition ABL Agreement (as defined in the DIP Credit Agreement) and the Prepetition ABL Administrative Agent and each other Prepetition ABL Party's administration of the loans provided pursuant to the Prepetition ABL Documents (as defined in the DIP Credit Agreement) or other credit extensions or financial accommodations made by the Prepetition ABL Lenders, the Issuing Banks (as defined in the Prepetition ABL Agreement) or any of their Affiliates from time to time to or for the account of the Debtors thereof pursuant to the Prepetition ABL Documents and the documents governing or evidencing any other liabilities thereunder, including, without limitation, any Prepetition ABL Obligations incurred under the Prepetition ABL Agreement, or in any way connected with or

relating to any other instrument or document executed or delivered in connection therewith and/or the administration or collection thereof and/or collateral therefor or guaranties thereof.

**Termination of DIP Facility**

55.    Upon payment by the Purchaser of the Cash Purchase Price and receipt by the DIP Administrative Agent (and certain other persons as directed in the Pay-Off Letter) of the Pay-Off Amount and Pay-Off Letter, all indebtedness and obligations of the Borrowers and the other Obligors to the DIP Agent and the DIP Lenders arising under the DIP Loan Agreement and the other Loan Documents (and to the Pre-Petition Agent and the Pre-Petition Lenders arising under the Pre-Petition Loan Agreement and the Pre-Petition Loan Documents) (other than (1) all obligations with respect to Outstanding Letters of Credit, including, without limitation, the Letter of Credit Reimbursement Obligations (as defined in the Pay-Off Letter), (2) obligations under the Loan Documents (including contingent reimbursement obligations and indemnity obligations) which, by their terms, survive the repayment of the Loans, the termination of the Commitments or the termination of the Loan Agreement and the other Loan Documents (or the Pre-Petition Loan Agreement and the Pre-Petition Loan Documents, as applicable) and (3) obligations under the Pay-Off Letter and the Cash Collateral Agreement (as defined in the Pay-Off Letter)) shall be indefeasibly paid in full and satisfied in full and discharged without any further action; *provided, however*, that in no event shall any Bank Product Debt (including, without limitation, in respect of existing (x) Cash Management Services and (y) other Bank Products) be deemed to be paid or discharged but rather shall be governed by the provisions of the applicable documents, agreements and instruments evidencing and/or otherwise governing any such Bank Product Debt, including without limitation the Cash Management Order, and applicable law, and all rights of the Banks (as defined in the Cash Management Order) with

01:23123571.1

respect to holdback, chargeback, offset, and recoupment are expressly preserved.  The Debtors shall maintain a minimum balance of not less than $2,000,000 (or such lower amount as agreed by the Debtors, the Purchaser, and Wells Fargo Bank, N.A.) in an account at Wells Fargo, which may be offset in respect of any exposure of Wells Fargo Bank in connection with cash management arrangements.  The Debtors are hereby authorized and empowered to execute and deliver the Pay-Off Letter and, upon execution and delivery, all the terms thereof (including the releases contained therein, as contemplated by paragraph 36 of the Final DIP Order) shall become effective.

56.     The Purchaser shall fund at Sale Commencement Date in an account designated by the Debtors (the "Carve Out Account") an amount equal to $15,800,000 which represents the aggregate of: (a) the Professional Fee Carve Out Cap (as defined in the Final DIP Order), *plus* (b) the Wind-Down Carve Out Amount (as defined in the Final DIP Order), *plus* (c) the amounts contemplated under paragraph 39(a)(iii) of the Final DIP Order, in each case calculated as of the date of the Closing (as defined in the Agency Agreement).  Upon the funding of the Carve Out Account as set forth in this paragraph [40(a)] the DIP Administrative Agent's, the DIP Tranche A-1 Documentation Agent's, the DIP Lenders', and the Prepetition ABL Parties' obligations under paragraph 39 of the Final DIP Order shall be satisfied and (b) none of the DIP Administrative Agent, the DIP Tranche A-1 Documentation Agent, the DIP Lenders, or the Prepetition ABL Parties shall have any further liability whatsoever for any fees or amounts constituting the Carve Out (as defined in the Final DIP Order), regardless of when arising or incurred.

57.     **Dismissal of Committee Adversary Proceeding**.  Following the occurrence of the Closing, the adversary proceeding captioned *The Official Committee of*

*Unsecured Creditors of the Bon-Ton Stores, Inc. v. Wells Fargo Bank, National Association, et al.*, Adv. Pro. Case No. 18-50381 (MFW) (Bankr. D. Del.) is deemed dismissed with prejudice and the Committee shall file an appropriate notice of dismissal dismissing such adversary proceeding.

58.    **Section 506(c)**.  Based upon the obligation of the Agent with respect to the Wind-Down Payment, neither the Debtors nor any other entity acting on their behalf or as their successor (including but not limited to the Committee and any chapter 7 or 11 trustee) may recover from the Notes Trustee, any holders of Second-Lien Notes or the Purchaser or the Agent, any costs or expenses of preserving, or disposing of, any of the collateral securing the Debtors' obligations under the Indenture and the Second-Lien Notes pursuant to section 506(c) of the Bankruptcy Code; *provided*, *however*, the aforementioned waiver of section 506(c) shall not apply to (i) Stub Rent Claims or (ii) postpetition claims for "free rent" pursuant to the agreements between the Debtors and any landlord.

59.    **Standing to Pursue Certain Causes of Action**.  Agent and its designees are granted derivative standing to pursue the Avoidance Actions (subject to Section 11.2(f) of the Agency Agreement) and Other Causes of Action in the name of and/or on behalf of the Debtors; provided however that pursuant to the terms of the Agency Agreement, the Avoidance Actions referenced in Section 11.2 of the Agency Agreement shall be released as of the Closing without further action or order of the Court.

60.    **No Liability for Claims**.  Neither the Purchaser nor the Agent shall be liable for any claims against the Debtors, the assets of the Debtors or a trustee appointed in these chapter 11 cases, and the Debtors shall not be liable for any claims against Purchaser or Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Purchaser and

the Agent shall have no successor or other liability whatsoever with respect to any

Encumbrances or claims of any nature that may exist against the Debtors, including, without

limitation, the Purchaser and the Agent shall not be, or be deemed to be:  (i) a successor in

interest or within the meaning of any law, including any revenue, successor liability, pension,

labor, COBRA, ERISA, bulk-transfer, products liability, tax or environmental law, rule or

regulation, or any theory of successor or transferee liability, antitrust, environmental, product

line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co-

employer or successor employer with the Debtors, and neither the Purchaser nor the Agent shall

have any obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act

claims (if any), COBRA claims, benefits or any other payments to employees of the Debtors,

including pursuant to any collective bargaining agreement, employee pension plan, or otherwise,

except as expressly set forth in the Agency Agreement.

      61.    **Standing**.  The Purchaser and the Agent are parties in interest and shall

have the ability to appear and be heard on all issues that would affect the rights of the Purchaser

or Agent under this Order, the various procedures contemplated herein, any issues related to or

otherwise connected to the Sale, and the Agency Agreement.  The Purchaser and the Agent have

standing to seek to enforce, among other things, the terms of this Order.

      62.    **Subsequent Plan Provisions**.  Nothing contained in any plan confirmed

in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other

order in these chapter 11 cases (including any order entered after any conversion of these cases

to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the

provisions of the Agency Agreement or the terms of this Order.  In the event there is a conflict

between the terms of this Order and the terms of any subsequent chapter 11 plan or any order to

be entered in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code), the terms of this Order shall control.

63. **Modifications**. The Agency Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates; *provided further*, that any amendment or modification to Sections 3.1(f) or 11.2(f) of the Agency Agreement shall require the consent of the Committee; *provided further* that, prior to the receipt by the DIP Administrative Agent of (a) the Cash Purchase Price and (b) the DIP Payoff Letter, any changes to the Agency Agreement shall require the written consent of the DIP Administrative Agent and the DIP Tranche A-1 Documentation Agent.

64. **Automatic Stay**. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow the Purchaser and the Agent to deliver any notice provided for in the Agency Agreement and allow the Agent and the Purchaser to take any and all actions permitted or required under the Agency Agreement in accordance with the terms and conditions thereof or order of the Court. Neither the Purchaser nor the Agent shall be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of their remedies under the Agency Agreement or any other document related to the Agency Agreement.

65. **Approval of Backup Bidder**. The Backup Bidder[6] is hereby approved and the bid submitted by the Backup Bidder is hereby approved and authorized. In accordance

---

[6]    The "Backup Bidder" is a contractual joint venture composed of Hilco Merchant Services, LLC and Gordon Brothers Retail Partners, LLC.

with the Bidding Procedures, the bid submitted by the Backup Bidder for the applicable assets of

the Debtors shall remain binding on the Backup Bidder until two days after the sale of the

applicable assets of the Debtors has closed (whether to the Purchaser or the Backup Bidder).  In

the event the Agency Agreement is terminated pursuant to its terms and the sale of the Assets to

the Purchaser is not consummated, the Backup Bidder will be deemed the Successful Bidder in

accordance with the Bidding Procedures on the date of termination of the Agency Agreement

(the "Backup Bidder Date") without need for further action.  In such case, the Debtors shall,

within one (1) business day of the Backup Bidder Date, file with the Court for entry by the Court

upon certification of counsel (with a copy concurrently provided by email to respective counsel

to the following parties:  (i) the Purchaser; (ii) the Committee; (iii) the DIP Lenders; (iv) the

ABL Lender; and (v) the United States Trustee for the District of Delaware): (a) the proposed

sale order with respect to a sale of the applicable assets of the Debtors to the Backup Bidder and

(b) a notice (w) advising that the Agency Agreement with the Purchaser has not been

consummated, (x) advising that the Backup Bid has become the Successful Bid pursuant to this

Sale Order, (y) advising of the Closing Date of the transaction under the Backup Bid and

(z) seeking entry of the proposed sale order approving the sale of the applicable assets of the

Debtors to the Backup Bidder.

**Additional Objections and Resolution Thereof**.

66.    **G-III**.  Notwithstanding anything to the contrary contained herein, the

Agent shall not be entitled to sell any furniture, fixtures, decorations, displays, lighting or

cabinets that are owned by G-III Apparel Group, Ltd. (the "G-III Owned Fixtures") but used by

the Debtors in connection with the sale and display of Calvin Klein sportswear, suits or

performance wear, and the G-III Owned Fixtures shall not be considered Assets; *provided*, that

01:23123571.1

47

such G-III Owned Fixtures shall not be removed from any of the Debtors' stores while any such stores remain in operation by the Debtors or the Agent, without prior written consent of the Debtors and the Agent.

> 67.    **Comenity Bank**.  Absent agreement between Comenity Bank and Agent or Merchant, as applicable, Comenity Bank's ("Comenity") Limited Objection and Reservation of Rights with Respect to the Sale, Including Any Assumption and Assignment of the Program Agreement [D.I. 521] is resolved as follows: notwithstanding any provision to the contrary in this Order or the Agency Agreement, (i) the Debtors, the Purchaser, and their respective agents, successors, and assigns shall not accept or process any purchases or returns with private label credit cards issued in accordance with the Private Label Credit Card Program Agreement dated as of December 6, 2011, and related documents ( collectively, the "Private Label Agreement") in any of the Debtors' locations, including the 42 stores already in liquidation pursuant to the *Final Order (A) Authorizing the Debtors to Assume Store Closing Agreement; (B) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances; (C) Approving Dispute Resolution Procedures; (D) Authorizing Customary Bonuses to Employees of Closing Stores; and (E) Approving the Debtors' Store Closing Plan* [D.I. 318], provided further that notwithstanding the foregoing, in the event of a return that is otherwise eligible for return pursuant to the terms of this Order and the Agency Agreement, the Agent may reimburse such customer for that return in cash; (ii) the Private Label Agreement shall be deemed rejected effective as of Sale Commencement Date; (iii) the Debtors and Comenity each agree that the non-acceptance of the credit cards during the Sale as provided herein is not a breach of the Private Label Agreement by the other party; (iv) Comenity's property and/or rights to assert and exercise setoff, recoupment, and/or chargebacks are preserved and are not subject to the

automatic stay, and are senior to the liens and superpriority claims granted to the Purchaser pursuant to the Agency Agreement and this Order, and all parties' rights to challenge any asserted setoff, recoupment, and/or chargebacks are preserved and are not affected by this Order; (v) Comenity's rights to assert any prepetition claims and postpetition claims against the Debtors are preserved, and the rights of all parties in interest to challenge such claims are preserved; (vi) the Debtors shall continue to preserve and provide Comenity with access to the Debtors' records related to credit transactions as provided in the Private Label Agreement; (vii) Purchaser acknowledges that it is not purchasing and does not intend to purchase and/or use any information owned by Comenity; (viii) Purchaser shall maintain the confidentiality of the Private Label Agreement and shall not disclose the terms of same to any third party without Comenity's written consent (except to the extent required by applicable law, rule or regulation, mandatory court process or request of regulatory agency; provided that, to the extent reasonably practicable and permitted by applicable law, rule or regulation, Purchaser shall provide reasonable advance written notice of any such disclosure to Comenity); (ix) nothing herein shall affect Comenity's purchase of recoverable sales taxes and other assets in accordance with the *Order Authorizing the Sale of Certain Recoverable Sales Taxes Free and Clear of All Liens, Claims, Interests, and Encumbrances* [D.I. 532]; and (x) Comenity shall be permitted to use the Debtors' marks (for Bon-Ton, Bergner's, Boston Store, Carson's, Elder-Beerman, Herberger's, Parisian, and Younkers) through December 31, 2018, and names through Decemeber 31, 2020, each solely as necessary to administer and collect the balances due on any accounts pursuant to the Private Label Agreement.

68.    **Infor, Inc.**  Notwithstanding anything to the contrary contained in this Order, this Order does not approve the sale or transfer of the software (the "Infor Software") of

Infor (US), Inc. ("Infor"), or grant any rights to possess or use the Infor Software, to any purchaser of any of the Debtors' assets.  For the avoidance of doubt, no purchaser of assets shall receive any rights to possess, use, or otherwise benefit from the Infor Software as a result of entry of this Order; provided, however, a purchaser and Infor may agree to enter into a license (or licenses) for such purchaser's possession and use of the Infor Software (the "Purchaser-Infor Agreement").  Unless and until a purchaser and Infor have entered into a Purchaser-Infor Agreement, no purchaser shall be entitled to possess, use, or otherwise benefit from the Infor Software. Absent a Purchaser-Infor Agreement, the Debtors shall (i) remove all copies of the Infor Software and any portions thereof from all computers and other storage media and devices on which the Infor Software is located (with no copies retained by the Debtors) prior to the transfer of any such assets to a purchaser, (ii) return the Infor Software to Infor, with such return to include all related documentation, manuals and copies, and (iii) certify to Infor in writing within 15 days of the Sale Closing that it has complied with these obligations.

69.    **SAP America, Inc.**  No provision of this Order, the Motion, or the Agency Agreement shall authorize the Debtors to: (i) assume, assume and assign, or transfer any agreement between any Debtor and SAP America, Inc., SAP Industries, Inc., Ariba, Inc., or their affiliates (collectively, the "SAP Entities"); (ii) sell, transfer, or assign any software, proprietary information, or cloud services owned, licensed, or provided by the SAP Entities (the "Software") to the Purchaser and/or Agent; or (iii) use, or allow the shared use of, the Software or any Software-related services provided by the SAP Entities by or for the benefit of the Purchaser and/or Agent or any other third party.  Any computers, equipment, hardware, or other property of the Debtors (collectively, "Computer Equipment") on which the Software is loaded or embedded may be sold, otherwise transferred, or disposed of only if the Debtors, Purchaser, or Agent

permanently delete all Software from Computer Equipment prior to its sale, transfer, or disposal.  If the Debtors wish to have any contract to which any of the SAP Entities is a party assumed or assumed and assigned as part of the Sale, any assumption, assignment, and cure issues related to any such contract shall be resolved by agreement between the SAP Entities, the Debtors, and the Purchaser and Agent (as applicable) or, if no agreement can be reached, by further order of the Court upon adequate notice to the SAP Entities.

70.     **VORH Associates, LLC**.  Notwithstanding anything to the contrary in this Order, the sale shall not be free and clear of, and shall not extinguish any party's rights pursuant to: (i) that certain Construction, Operating and Reciprocal Easement Agreement, dated as of January 8, 2002 by and between Meadowbrook Associates LLC and Parisian, Inc. which was recorded on January 17, 2002, in the Register of Deeds Office for Oakland County, Michigan, in Liber 24540, Page 506; and (ii) that certain Supplemental Agreement, dated January 8, 2002 by and between Meadowbrook Associates LLC and Parisian, Inc., with respect to which a Notice of Supplemental Agreement, dated January 8, 2002, was recorded on January 17, 2002, in the Register of Deeds Office for Oakland County, Michigan in Liber 24540, Page 499.

71.     **Retention of Jurisdiction**.  Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 18 through 20 herein shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner; (ii) any claim of the Debtors, the landlords, the DIP Administrative Agent, the

DIP Tranche A-1 Documentation Agent, the Purchaser and/or the Agent for protection from interference with the Sale; (iii) any other disputes related to the Sale; and (iv) to protect the Debtors, the Purchaser and/or the Agent against any assertions of Encumbrances.  No such parties or person shall take any action against the Debtors, the Purchaser, the Agent, the landlords or the Sale until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

72.     **No Stay of Order**.  Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Neither the Debtors, the Purchaser nor the Agent shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors, the Purchaser and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.

73.     **Further Assurances**.  From time to time, as and when requested, all parties to the Agency Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale.

74.     **Governing Terms**.  To the extent this Order is inconsistent with any prior order or pleading in these chapter 11 cases, the terms of this Order shall govern.  To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency

Agreement (including all ancillary documents executed in connection therewith) or the Sale

Guidelines, this Order shall govern and control.

75.     Nothing herein approves Retention Bonuses (as defined in the Agency

Agreement) to insiders, as defined by section 101(31) of the Bankruptcy Code.

76.     **Final Order**.  This Order constitutes a final order within the meaning of

28 U.S.C. § 158(a).

77.     **Notice of Sale Closing Date**.  Within one (1) business day of the

occurrence of the Closing Date of the Transaction, the Debtors shall file and serve a notice of

same.

78.     The Debtors are authorized to take all actions necessary or appropriate to

effectuate the relief granted pursuant to this Sale Order.

79.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

80.     All time periods set forth in this Order shall be calculated in accordance

with Bankruptcy Rule 9006(a).

01:23123571.1          **Dated: April 18th, 2018**
                       **Wilmington, Delaware**

                                            **MARY F. WALRATH**
                                            **UNITED STATES BANKRUPTCY JUDGE**